**2025-1791**

---

**UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

---

SAMSUNG DISPLAY CO., LTD.,
*Appellant,*

v.

INTERNATIONAL TRADE COMMISSION,
*Appellee,*

and

MIANYANG BOE OPTOELECTRONICS TECHNOLOGY CO., LTD.,
*Intervenor.*

---

Appeal from the United States International Trade Commission
in Investigation No. 337-TA-1351

---

# NONCONFIDENTIAL RESPONSE BRIEF OF APPELLEE INTERNATIONAL TRADE COMMISSION


MARGARET D. MACDONALD
General Counsel
Telephone (202) 205-2561

AMANDA P. FISHEROW
Assistant General Counsel
Telephone (202) 205-2737

LYNDE F. HERZBACH
Acting Assistant General Counsel
Telephone (202) 205-3228

CATHY CHEN
Attorney for Appellee
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone (202) 205-2392


Dated: November 21, 2025

## LANGUAGE OF EXEMPLARY PATENT CLAIMS AT ISSUE

Claim 1 of U.S. Patent No. 9,818,803, from which asserted claims 5 and 21 depend, provides (Appx286-287):

**1**. A pixel arrangement structure of an organic light emitting diode (OLED) display, comprising:

a plurality of pixels for displaying an image on the OLED display and comprising:

a first pixel having a center coinciding with a center of a virtual square;

a second pixel separated from the first pixel and having a center at a first vertex of the virtual square;

another first pixel on a line defined by the center of the virtual square and the first vertex, the first pixel, the second pixel, and the other first pixel being consecutive pixels on the line from among the plurality of pixels; and

a third pixel separated from the first pixel and the second pixel, and having a center at a second vertex neighboring the first vertex of the virtual square,

wherein the second pixel has a larger area than that of the third pixel, and

wherein the first pixel is configured to emit green light.

## LANGUAGE OF EXEMPLARY PATENT CLAIMS AT ISSUE (cont'd)

Claim 45 of U.S. Patent No. 11,594,578, from which asserted claim 47 depends, provides (Appx304):

**45.** A pixel arrangement structure of an organic light emitting diode (OLED) display, the pixel arrangement structure comprising:

a plurality of first pixels, wherein the first pixels have a shape comprising edges;

a plurality of second pixels; and

a plurality of third pixels,

wherein the OLED display comprises a pixel defining layer defining areas of the first pixels, the second pixels, and the third pixels,

wherein the first pixels, the second pixels, and the third pixels are configured to emit different color lights,

wherein only one of the second pixels and the third pixels is included in a virtual quadrangle containing outer edges comprising some of the edges of a group of four neighboring ones of the plurality of first pixels, all portions of all others of the second pixels and the third pixels being outside of the virtual quadrangle, and

wherein a shortest distance between any two of the group of four neighboring ones of the plurality of first pixels is greater than a shortest distance between the only one of the second pixels and the third pixels included in the virtual quadrangle and a nearest one of the second pixels or the third pixels in a direction perpendicular to any side of the virtual quadrangle.

## LANGUAGE OF EXEMPLARY PATENT CLAIMS AT ISSUE (cont'd)

Claim 1 of U.S. Patent No. 7,414,599, from which asserted claims 2 and 3 depend, provides (Appx272-273):

**1**. A pixel circuit in an organic light emitting device, comprising:

> a first transistor for delivering a data signal voltage in response to a current scan line signal;
>
> a second transistor for generating a driving current depending on the data signal voltage delivered through the first transistor;
>
> a third transistor for detecting and self-compensating threshold voltage deviation in the second transistor;
>
> a fifth transistor for providing a power supply voltage for the second transistor in response to a current light-emitting signal;
>
> a sixth transistor which is coupled in series between the second transistor and an electroluminescent element and for providing the driving current for the electroluminescent element through the second transistor in response to the current light-emitting signal; and
>
> a capacitor for storing the data signal voltage delivered to the second transistor,
>
> wherein the electroluminescent element emitts [sic] light corresponding to the driving current generated through the second transistor.

## TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES .......... vii

STATEMENT OF RELATED CASES .......... 1

STATEMENT OF THE ISSUES .......... 1

STATEMENT OF THE CASE .......... 2

I. PATENTS-AT-ISSUE .......... 3

A. The ’803 and ’578 Patents .......... 3

B. The ’599 Patent .......... 4

II. PRODUCTS-AT-ISSUE .......... 5

A. Accused Products .......... 5

B. Alleged Domestic Industry Products .......... 6

III. RELEVANT COMMISSION PROCEEDINGS .......... 8

A. Samsung Display’s Domestic Industry Theories Before the ALJ .......... 8

B. Samsung Display Abandoned Its Theory of a Domestic Industry Based on SDAL’s and UDC’s Investments with Respect to the AMOLED DI Products .......... 10

C. The Commission Found the Record Evidence Did Not Warrant Extending the Domestic Industry Beyond the Patent-Practicing AMOLED DI Products .......... 11

SUMMARY OF THE ARGUMENT .......... 20

ARGUMENT .......... 23

I. STANDARD OF REVIEW .......... 23

II. SAMSUNG DISPLAY NEVER RAISED ITS STATUTORY ARGUMENTS BEFORE THE ALJ AND, THUS, THOSE ARGUMENTS ARE FORFEITED .......... 24

A. Samsung Display Forfeited Its New Argument that the Galaxy DI Products Are Themselves “Articles Protected by the Patent” .......... 25

## TABLE OF CONTENTS (cont'd)

**Page**


B. Samsung Display Forfeited Its New Argument Advocating for a Bright-Line Rule as to the Scope of "Articles Protected by the Patent" ..... 27

C. Samsung Display Forfeited Its New Arguments as to Why SEA's Investments in the Galaxy DI Products Are "with Respect to" the AMOLED DI Products ..... 29

III. SAMSUNG DISPLAY CRITICISM OF THE REALITIES OF THE MARKETPLACE FRAMEWORK AND THE *MAGNETIC TAPE* FACTORS ARE FORFEITED AND UNFOUNDED ..... 31

A. Samsung Display Forfeited Its Argument that the *Magnetic Tape* Factors Are Inapplicable ..... 33

B. Samsung Display's New "Degree of Connection Test" Is Forfeited and Untethered to the Statute ..... 34

C. Substantial Evidence Supports the Commission's Finding that the Realities of the Marketplace Do Not Warrant Extending the Domestic Industry Beyond the Displays ..... 37

IV. ABSENT FORFEITURE, THE COURT SHOULD REMAND FOR THE COMMISSION TO HEAR AND DECIDE SAMSUNG DISPLAY'S STATUTORY ARGUMENTS IN THE FIRST INSTANCE OR REJECT THEM ..... 45

A. Samsung Display's Sale of the AMOLED DI Products Exhausted Its Patent Rights in Those Products and, Thus, the Downstream Galaxy DI Products Incorporating Those Products Are Not "Articles Protected By the [Asserted Patents]" ..... 46

B. Samsung Display Failed to Establish that SEA Is a Licensee and, thus, the Downstream Galaxy DI Products Are Not Articles Protected by the Asserted Patents ..... 51

C. There Is No Inconsistency Between the Commission's Readings of Section 337(a)(1) and Section 337(a)(2)-(3) ..... 54

## TABLE OF CONTENTS (cont'd)

**Page**

D. Samsung Display's Interpretation of "with Respect to the Articles Protected by the Patent" Is Overbroad ....59

CONCLUSION ....61

## CONFIDENTIAL MATERIAL OMITTED

Pursuant to Federal Circuit Rule 25.1(e) and the Protective Order issued in the underlying investigation, Appellee International Trade Commission is filing a confidential version of this brief that highlights the material marked confidential, and a nonconfidential version that includes appropriate redactions. In the nonconfidential version of this brief, confidential material has been deleted on pages 7, 15, 18, 19, 38, 41, 42, and 53. The general nature of the deleted material is Appellant Samsung Display Co., Ltd.'s confidential business information regarding its customers, their products, and business relationships.

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Bio-Rad Labs., Inc. v. ITC*,
996 F.3d 1302 (Fed. Cir. 2021) ....................58

*Bowman v. Monsanto Co.*,
569 U.S. 278 (2013)....................50

*Broadcom Corp. v. ITC*,
28 F.4th 240 (Fed. Cir. 2022) ....................23, 51

*Broadcom Corp. v. ITC*,
542 F.3d 894 (Fed. Cir. 2008) ....................27, 29

*ClearCorrect Operating, LLC v. ITC*,
810 F.3d 1283 (Fed. Cir. 2015) ....................46

*Finnigan Corp. v. ITC*,
180 F.3d 1354 (Fed. Cir. 1999) ....................31, 32, 34

*Guangdong Alison Hi-Tech Co. v. ITC*,
936 F.3d 1353 (Fed. Cir. 2019) ....................31

*HC Robotics v. ITC*,
2025 WL 2424283 (Fed. Cir. Aug. 17, 2025) ....................50

*Hyundai Elec. Indus. Co. v. USITC*,
899 F.2d 1204 (Fed. Cir. 1990) ....................57

*Impression Prods. Inc. v. Lexmark Int'l, Inc.*,
581 U.S. 360 (2017)....................47, 48, 49, 52

*Interactive Gift Express, Inc. v. Compuserve Inc.*,
256 F.3d 1323 (Fed. Cir. 2011) ....................45

*Interdigital Comm'cs, LLC v. ITC*,
707 F.3d 1295 (Fed. Cir. 2013) ....................55

*Key Pharms. v. Hercon Labs. Corp.*,
161 F.3d 709 (Fed. Cir. 1998) ....................33

## TABLE OF AUTHORITIES (cont'd)

**Cases (cont'd)** **Page(s)**

*Kyocera Wireless Corp. v. ITC*,
545 F.3d 1340 (Fed. Cir. 2008) ....................................................25, 57

*Lelo Inc. v. ITC*,
786 F.3d 879 (Fed. Cir. 2015) ..........................................................53

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024)...........................................................................24

*Microsoft Corp. v. ITC*,
731 F.3d 1354 (Fed. Cir. 2013) ........................................................51

*Motorola Mobility, LLC v. ITC*,
737 F.3d 1345 (Fed. Cir. 2013) ...................................................23, 36

*N. Telecom Ltd. v. Samsung Elecs. Co., Ltd.*,
215 F.3d 1281 (Fed. Cir. 2000) ........................................................33

*Philip Morris Prods. S.A. v. ITC*,
63 F.4th 1328 (Fed. Cir. 2023) ...................................25, 27, 29, 31, 34

*Quanta Comput., Inc. v. LG Elecs., Inc.*,
553 U.S. 617 (2008)...........................................................................47

*Roku, Inc. v. ITC*,
90 F.4th 1367 (Fed. Cir. 2024) .........................................23, 51, 53, 60

*Singleton v. Wulff*,
428 U.S. 106 (1976)...........................................................................45

*SmithKline Beecham Corp. v. Apotex Corp.*,
439 F.3d 1312 (Fed. Cir. 2006) ...................................................29, 32

*Spansion, Inc. v. ITC*,
629 F.3d 1331 (Fed. Cir. 2010) ........................................................37

*Tessera, Inc. v. ITC*,
646 F.3d 1357 (Fed. Cir. 2011) ........................................................55

## TABLE OF AUTHORITIES (cont'd)

**Cases (cont'd)** **Page(s)**

*United States v. Dunkel*,
927 F.2d 955 (7th Cir. 1991) ....................................................................29

*United States v. Univis Lens Co.*,
316 U.S. 241 (1942)....................................................................................47

**Statutes**

5 U.S.C. § 706 ..............................................................................................23

19 U.S.C. § 1337 .......................................................................................*passim*

19 U.S.C. § 1337(a)(1).............................................................................54, 58

19 U.S.C. § 1337(a)(2)..............................................................................*passim*

19 U.S.C. § 1337(a)(3)..............................................................................*passim*

19 U.S.C. § 1337(a)(3)(A) ..............................................................8, 19, 55, 59

19 U.S.C. § 1337(a)(3)(B) ....................................................................8, 19, 55

19 U.S.C. § 1337(b)(2)....................................................................................25

**Regulations**

19 C.F.R. § 210.10(b)(1)....................................................................................5

19 C.F.R. § 210.43(b) ......................................................................................31

19 C.F.R. § 210.43(b)(2)...............................................................................31, 34

**USITC Administrative Decisions**

*Certain Automated Put Walls and Automated Storage and Retrieval Sys., Associated Vehicles, Associated Control Software, and Component Parts Thereof*,
Inv. No. 337-TA-1293, 2023 WL 5426449 (July 31, 2023) ............................50

## TABLE OF AUTHORITIES (cont'd)

**USITC Administrative Decisions (cont'd)** **Page(s)**

*Certain Batteries & Electrochemical Devices Containing Composite Separators, Components Thereof, & Prods. Containing Same*, Inv. No. 337-TA-1087, 2018 WL 4331965 (Sept. 7, 2018)................................28

*Certain Computs. and Comput. Peripheral Devices, and Components Thereof and Prods. Containing Same*, Inv. No. 337-TA-841, 2014 WL 5380098 (Jan. 9, 2014)..................................58

*Certain Concealed Cabinet Hinges and Mounting Plates*, Inv. No. 337-TA-289, 1990 WL 10608981 (Jan. 8, 1990)................................12

*Certain Diltiazem Hydrochloride and Diltiazem Preparations*, Inv. No. 337-TA-349, 1995 WL 945191 (Feb. 1, 1995)...................................35

*Certain Elec. Devices, Including Streaming Players, Televisions, Set Top Boxes, Remote Controllers, and Components Thereof*, Inv. No. 337-TA-1200, 2021 WL 5822291 (Dec. 3, 2021)..........................51, 53

*Certain Erasable Programmable Read-Only Memories, Components Thereof, Prods Containing Such Memories, & Processes for Making Such Memories*, Inv. No. 337-TA-276, 1989 WL 1716252 (May 1989)......................................56

*Certain Integrated Circuit Chips and Products Containing the Same*, Inv. No. 337-TA-859, 2014 WL 12796437 (Aug. 22, 2014).......................12, 13

*Certain Integrated Circuits and Products Containing the Same*, Inv. No. 337-TA-1148, 2022 WL 20402978 (Dec. 30, 2020)............................56

*Certain Magnetic Tape Cartridges & Components Thereof*, Inv. No. 337-TA-1058, 2019 WL 2635509 (Apr. 9, 2019)........................*passim*

*Certain Male Prophylactic Devices*, Inv. No. 337-TA-546, 2008 WL 2952724 (Aug. 1, 2007)...........................52, 53

*Certain Microfluidic Systems and Components Thereof and Products Containing the Same*, Inv. No. 337-TA-1100, 2020 WL 1504738 (Mar. 24, 2020).............................57

## TABLE OF AUTHORITIES (cont'd)

**USITC Administrative Decisions (cont'd)** **Page(s)**

*Certain Microsphere Adhesives, Process for Making Same, and Products Containing Same, Including Self-Stick Repositionable Notes*, Inv. No. 337-TA-366, 1996 WL 1056095 (Jan. 16, 1996)......................51

*Certain Mobile Telephones, Tablet Computers with Cellular Connectively, and Smart Watches with Cellular Connectively, Components Thereof, and Products Containing Same*, Inv. No. 337-TA-1299, 2023 WL 2571948 (Mar. 15, 2023) .............................57

*Certain Modular Structural Sys.*, Inv. No. 337-TA-164, 0084 WL 951886 (Jun. 1, 1984) ....................................12

*Certain Optical Disc Drives, Components Thereof, & Prods. Containing Same*, Inv. No. 337-TA-897, 2014 WL 12942528 (Sept. 29, 2014).............................52

*Certain Road Milling Machines and Components Thereof*, Inv. No. 337-TA-1067, 2018 WL 6011830 (Oct. 1, 2018) ................................50

*Certain Video Capable Electronic Devices, Including Computers, Streaming Devices, Televisions, and Components and Modules Thereof*, Inv. No. 337-TA-1380, 2025 WL 1250809 (Apr. 23, 2025)..............................44

*Certain Video Capable Electronic Devices, Including Computers, Streaming Devices, Televisions, Cameras, and Components and Modules Thereof*, Inv. No. 337-TA-1379, 2025 WL 1250782 (Apr. 22, 2025)........................44, 45

*Certain Video Game Sys. and Wireless Controllers and Components Thereof*, Inv. No. 337-TA-770, 2013 WL 12410036 (Oct. 28, 2013) .......................*passim*

## STATEMENT OF RELATED CASES

The Commission is unaware of any case pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal other than those identified in the opening brief of Appellant Samsung Display Co., Ltd. ("Samsung Display" or "SDC").

## STATEMENT OF THE ISSUES

The Commission respectfully submits the following statement of the issues:

1. Whether Samsung Display forfeited its statutory argument that a customer's downstream products incorporating a purchased patented component are "articles protected by the patent[s]" under 19 U.S.C. §§ 1337(a)(2) and (3) and its new arguments as to why the customer's domestic investments in commercializing the downstream products are "with respect to" or "related to" the patented component because Samsung Display failed to first present these arguments to the administrative law judge ("ALJ") and/or the Commission.

2. Whether Samsung Display forfeited its argument that the Commission erred in looking to the realities of the marketplace to determine whether investments other than in the patented technology or patented article may be considered part of the domestic industry "with respect to the articles protected by the patent[s]" and whether substantial evidence supports the Commission's determination that the realities of the marketplace do not warrant extending the

domestic industry beyond the patented displays to a customer's investments in downstream smartphones, which are far removed from those displays and the patented technologies.

3. Absent forfeiture, whether the Court should remand the investigation to the Commission to adjudicate Samsung Display's statutory arguments in the first instance and alternative arguments that respondents made below as to why Samsung Display cannot rely on SEA's investments in downstream smartphones to satisfy the domestic industry.

## STATEMENT OF THE CASE

The Commission provides the following Statement of the Case in response to Samsung Display's statement.

The Commission instituted the underlying investigation based on Samsung Display's complaint against numerous retailers of active matrix organic light-emitting diode ("AMOLED") replacement displays for mobile devices.[1] Appx7593-7596 (Notice of Investigation); Appx53-56. The complaint alleged patent infringement as the basis of a violation under section 337 of the Tariff Act of 1930 (19 U.S.C. § 1337). Shortly after institution of the investigation, the Commission granted Intervenor Mianyang BOE Optoelectronics Technology Co.,

[1] None of the accused retailers intervened in this appeal.

Ltd.'s ("BOE") motion to intervene as a respondent in the investigation. Appx50. BOE designs and manufactures AMOLED replacement displays. Appx53.

Following an evidentiary hearing, the presiding ALJ issued a final initial determination ("FID") on November 15, 2024, finding no violation of section 337 because Samsung Display failed to satisfy the domestic industry requirement. Appx37. On March 19, 2025, the Commission affirmed, with modifications, the finding of no violation of section 337 and issued an opinion setting forth its reasoning. Appx38-39.

## I. PATENTS-AT-ISSUE

Only three of Samsung Display's five patents asserted in the underlying investigation are relevant on appeal: U.S. Patent Nos. 9,818,803 ("the '803 patent"); 11,594,578 ("the '578 patent"); and 7,414,599 ("the '599 patent") (collectively, "Asserted Patents").[2] The Asserted Patents describe the field of art as organic light emitting diode (OLED) displays.

### A. The '803 and '578 Patents

The '803 and '578 patents, entitled "Pixel Arrangement Structure for Organic Light Emitting Display Device," are related and share a common

---

[2] The fourth asserted patent was withdrawn from the investigation before the evidentiary hearing while the fifth asserted patent was found not infringed and Samsung Display did not petition for Commission review and is not on appeal here.

specification. Appx276-287 (’803 patent); Appx289-307 (’578 patent). As shown below in Figures 1 and 5, these patents disclose particular pixel arrangement structures of an OLED display for displaying images. Appx283-284 (1:15-20, 1:54-3:10); Appx298-299 (1:20-27, 1:61-3:20).

FIG.1




FIG.5




Appx278; Appx282. Asserted claims 5 and 21 of the ’803 patent are directed to the pixel arrangement structure of Figure 1 and asserted claims 5, 10, 17, 40, 41, and 47 of the ’578 patent are directed to the pixel arrangement structure of Figure 5. Appx76-78; Appx114-118. The specification teaches that the disclosed pixel arrangement structures may improve the aperture ratio of the pixels and reduce the manufacturing time and cost of the OLED display. Appx285-286 (5:16-26, 8:34-45).

### B. The ’599 Patent

The ’599 patent is entitled “Organic Light Emitting Device Pixel Circuit and Driving Method Therefor.” Appx262. The patent addresses the problem of variability in the amount of current that passes through the electroluminescent (EL)

element of a pixel as a result of threshold voltage deviations between pixels. Appx269 (1:38-50). This change in current causes the brightness to vary noticeably from pixel to pixel. As shown in Figure 3 below, the patent discloses a pixel circuit in an OLED display "capable of detecting and self-compensating threshold voltage deviations." Appx270 (3:44-47).

FIG. 3




Appx265. The specification teaches that the self-correcting circuit can "finely control the current flowing into the organic EL element, thereby providing the high gradation of the organic EL element" and achieve uniformity of light output across the display. Appx272 (8:13-21); Appx269 (1:38-50). Asserted claims 2, 3, 13, 15, and 16 of the '599 patent are directed to a pixel circuit in an OLED display. Appx155-158.

## II. PRODUCTS-AT-ISSUE

### A. Accused Products

Samsung Display seeks a general exclusion order barring entry of infringing AMOLED displays used as replacement displays for mobile devices. Appx56-59; Appx232-237. Specifically, pursuant to 19 C.F.R. § 210.10(b)(1), the plain

language description of the accused products, which defines the scope of the investigation, is:

> [A]ctive matrix organic light-emitting diode ('AMOLED') display panels and modules used as replacement displays for mobile devices comprising organic pixel elements for presenting information to a viewer which infringe one or more claims of the Asserted Patents, and components thereof, where AMOLED display modules refers to the assembly of an AMOLED display panel (containing light-emitting materials, pixel circuitry, and encapsulation layers on a substrate) with additional components such as a connector cable, one or more polarizing layers, window glass, and/or housing materials around the AMOLED display panel.

Appx10; Appx7593 (Notice of Investigation).

### B. Alleged Domestic Industry Products

Samsung Display is an AMOLED manufacturing company based in South Korea. Appx53. Its AMOLED displays are used in a wide variety of consumer products including televisions, notebooks, laptops, automotive displays, mobile phones, and virtual reality products. Appx23-24. Samsung Display sells its AMOLED displays to mobile phone manufacturers, such as Samsung Electronics Corporation ("SEC")[3] as well as SEC's competitors. Appx23-24; Appx219 (citing

---

[3] Non-party SEC is a large consumer electronics manufacturer located in South Korea. SEC owns approximately 85% of Samsung Display. While both companies contain the name "Samsung," they are "separate and distinct companies that operate independently." Appx66216 (Q/A 10) (Kim).

Appx66216 (Q/A 11) (Kim) ("SDC's and SEC's independence from one another is important because SDC supplies not only SEC but also SEC's competitors, including customer and customer.")); Appx68762. Samsung Display's AMOLED displays are also sold to device manufacturers and retailers for use as replacement displays for mobile phones. Appx11; Appx209; Appx251-252; Appx68762.

Before the ALJ, Samsung Display alleged two categories of products are relevant to the domestic industry. First, it alleged that the domestic industry includes domestic investments related to certain AMOLED displays that it manufactured abroad ("AMOLED DI Products"). Appx10; Appx205. All parties agreed that the AMOLED DI Products are the patent-practicing articles. Appx14; Appx205 (n.49); Appx68733; Appx68737; Appx68866.

Second, Samsung Display alleged that the realities of the marketplace justified extending the domestic industry beyond the AMOLED DI Products to include its customer's domestic investments related to certain downstream Galaxy smartphones that incorporate the AMOLED DI Products ("Galaxy DI Products"). Appx205; Appx68733-68737; Appx70058-70059. Samsung Display sold the foreign-made AMOLED DI Products to SEC in arms-length transactions. Appx11; Appx208-209. SEC used some of the purchased displays to make the Galaxy DI Products in Vietnam and sold others to retailers as replacement displays in the United States. Appx209; Appx217. SEC then sold the Galaxy DI Products to its

U.S. subsidiary, Samsung Electronics America ("SEA"), for importation into the United States. Appx209; Appx217.

## III. RELEVANT COMMISSION PROCEEDINGS

### A. Samsung Display's Domestic Industry Theories Before the ALJ

As discussed above, Samsung Display relied on investments in the AMOLED DI Products that it manufactured abroad for SEC and the downstream Galaxy DI Products that are imported by SEA. For each of these two categories of products, Samsung Display alleged different investments establish a domestic industry under section 337(a)(3)(A) and (B). For the AMOLED DI Products, Samsung Display relied on investments of its U.S.-based research and development laboratory, Samsung Display America Lab ("SDAL"), and those of a third-party supplier, Universal Display Corp. ("UDC"). Appx14; Appx220-229. For the Galaxy DI Products, Samsung Display relied solely on investments of its customer, SEA.[4] Appx14; Appx220.

---

[4] Before the evidentiary hearing, Samsung Display argued in only the most superficial manner that a domestic industry exists based on a combination of SEA's, SDAL's, and UDC's investments with respect to the Galaxy DI Products. Appx46331 (SDC Pre-hr'g Br.). Because Samsung Display abandoned that argument *after* the hearing, the ALJ did not address it. Appx68732-68750 (SDC Post-Hr'g Br.); Appx220. Accordingly, during the Commission's review of the FID, the Commission found that Samsung Display relied solely on SEA's investments with respect to the Galaxy DI Products to establish a domestic industry. Appx14; *see* Appx15 (n.12) (citing Appx70124-70125 (SDC Pet.);

The parties agreed before the ALJ that the AMOLED DI Products are the "patent-practicing article[s]" and that investments made by SDAL and UDC that related to the AMOLED DI Products are relevant to the domestic industry. Appx14; Appx68733; Appx205 (n.49); Appx68867-68868.

Before the ALJ, Samsung Display neither argued that the downstream Galaxy DI Products are themselves "articles protected by the patent[s]" nor that the statute required the domestic industry to include investments of its customer, SEA, in the Galaxy DI Products. *See generally* Appx68732-68750 (SDC Post-Hr'g Br.); Appx68953-68966 (SDC Post-Hr'g Reply). Instead, Samsung Display recognized that the Galaxy DI Products were downstream products and repeatedly argued that the realities of the marketplace justified extending the domestic industry beyond the "patent-practicing article[s]" to include SEA's investments in commercializing those downstream products purchased from SEC. Appx205-220; Appx68733-68737 (SDC Post-Hr'g Br.); Appx68953-68959 (SDC Post-Hr'g Reply). The Commission Investigative Staff, Intervenor BOE and other respondents argued the record evidence did not warrant extending the domestic industry to include SEA's investments in the Galaxy DI Products. Appx68529-68532; Appx68868-68873.

---

Appx70535-70536 (Resp. Opp. to SDC Pet.); Appx70298 (n.11) (OUII Resp. to Pet.)).

Alternatively, BOE and other respondents argued that Samsung Display exhausted its patent rights in the AMOLED DI Products when it sold them overseas to SEC and that patent-exhausted products, such as the Galaxy DI Products, are not "articles protected by the [asserted] patent[s]." Appx68535. Samsung Display asserted that "[p]atent exhaustion has no bearing on what qualifies as 'articles protected by [a] patent.'" Appx68739.

### B. Samsung Display Abandoned Its Theory of a Domestic Industry Based on SDAL's and UDC's Investments with Respect to the AMOLED DI Products

Following the evidentiary hearing and post-hearing briefing, the ALJ determined that Samsung Display did not meet its burden of proving a domestic industry exists with respect to the AMOLED DI Products. In particular, the ALJ found that Samsung Display failed to show SDAL's investments were significant and that Samsung Display's allocation of UDC's investments was flawed and unreliable. Appx220-229. The Commission adopted these findings. Appx16. Samsung Display did not seek Commission review of these findings and, thus, it has abandoned all reliance on SDAL's and UDC's investments to establish a domestic industry with respect to the AMOLED DI Products. Appx70125 (SDC Pet.); *see supra*, Subpart A n.4.

### C. The Commission Found the Record Evidence Did Not Warrant Extending the Domestic Industry Beyond the Patent-Practicing AMOLED DI Products

The Commission affirmed the ALJ's finding that Samsung Display's AMOLED DI Products are the only "articles protected by the patent[s]" for purposes of section 337 and Samsung Display did not prove the realities of the marketplace justified extending the domestic industry beyond the AMOLED DI Products to include investments related to the downstream Galaxy DI Products. Appx13-31; Appx204-218. The Commission did not consider respondents' patent exhaustion argument because Samsung Display did not argue before the ALJ that the Galaxy DI Products were themselves "articles protected by the patent[s]." *See supra*, Subpart (A).

#### 1. The Commission's "Realities of the Marketplace" Analysis to Determine the Articles Protected by the Asserted Patents

The ALJ found the realities of the marketplace did not warrant extending the domestic industry beyond the patent-practicing AMOLED DI Products to include the downstream Galaxy DI Products and SEA's investments in their commercialization. Appx205-219. The ALJ first noted that a domestic industry is generally defined by the articles that practice the asserted patents, which the parties agreed were the AMOLED DI Products. Appx205 (citing, *e.g.*, *Certain Video Game Sys. and Wireless Controllers and Components Thereof*, Inv. No. 337-TA-770, Comm'n Op., 2013 WL 12410036, at *40-43 (Oct. 28, 2013) ("*Video*

*Game*"); *Certain Modular Structural Sys.*, Inv. No. 337-TA-164, Comm'n Op., 0084 WL 951886, at *5 (Jun. 1, 1984) (noting "a longstanding practice of defining the industry in an intellectual-property-based section 337 case in terms of the article or articles resulting from the exploitation of the involved intellectual property right")); *see Certain Concealed Cabinet Hinges and Mounting Plates*, Inv. No. 337-TA-289, Comm'n Op., 1990 WL 10608981, at *9 (Jan. 8, 1990) (stating that a domestic industry exists "with respect to the particular articles protected by the relevant intellectual property right").

The ALJ explained that, under certain circumstances, the realities of the marketplace may justify a modification of this principle. Appx206. Specifically:

> [T]he Commission recognizes expenditures in a downstream product where a patented article "is not itself an actual article of commerce, but is physically incorporated as a component in a downstream article of commerce." In such circumstances, the Commission may, *depending on the facts of each particular investigation*, extend the relevant industry to the downstream article.

Appx206 (quoting *Video Game*, 2013 WL 12410036, at *40) (citation omitted and emphasis added).

The ALJ recognized that the "articles requirement sometimes requires the Commission to determine what the appropriate domestic industry articles are." Appx205 (quoting *Certain Integrated Circuit Chips and Products Containing the Same*, Inv. No. 337-TA-859, Comm'n Op., 2014 WL 12796437, at *21 (Aug. 22,

2014) ("*Integrated Circuit Chips*")). In such cases, "the Commission has looked to the 'realities of the marketplace' to decide what 'article' is protected by the patent." *Integrated Circuit Chips*, 2014 WL 12796437, at *21 (citation omitted). "For example, the Commission has looked at whether the article is an entire device or a component thereof, or a downstream product containing the patented component, depending on the facts presented in an investigation as to what articles are allegedly imported." *Id*.

The ALJ also noted that the Commission has articulated factors relevant to the realities of the marketplace inquiry. Appx207-208. These factors, as summarized in *Certain Magnetic Tape Cartridges & Components Thereof*, Inv. No. 337-TA-1058 ("*Magnetic Tape*"), may include whether the patented technology is sold as a separate entity or article of commerce and whether it is an essential component of the downstream product. Comm'n Op., 2019 WL 2635509, at *31 (Apr. 9, 2019) (citing *Video Game*, 2013 WL 12410036, at *40-43). But the "[m]ore important[]" inquiry is whether the alleged domestic industry activities "have a direct relationship to exploitation of the patented technology." *Video Game*, 2013 WL 12410036, at *41. A domestic industry may not extend to activities that are "far removed from the technology protected by the patent." *Id.* In other words, the Commission considers what is claimed by the asserted patent.

### 2. The Commission's Consideration of the Specific Factors Relevant to the Realities of the Marketplace Inquiry

The Commission considered the relevant factors and determined to affirm, with modified reasoning, the ALJ's determination that the realities of the marketplace did not warrant including the Galaxy DI Products in the domestic industry. Appx21-31. Based on the record evidence, the Commission found that the patent-practicing AMOLED DI Products were sold as separate articles of commerce and were exploited, even apart from their use in the Galaxy DI Products. Appx22-25; Appx208-209. The Commission also found other kinds of unpatented displays, *e.g.*, LCD or OLED displays, can be used in place of the AMOLED DI Products in the Galaxy DI Products. Appx25-28. The Commission further determined that Samsung Display did not meet its burden of demonstrating a connection between SEA's investments in the Galaxy DI Products and the patented display technologies or the AMOLED DI Products and some of those investments are far removed from the patents and patent-practicing articles. Appx28-31; Appx211-218. Accordingly, the Commission determined that the specific facts in this investigation did not warrant extending the domestic industry beyond the AMOLED DI Products.

#### a. Separate Entity or Article of Commerce Analysis

In analyzing whether the patented technology at issue is sold as a separate entity or article of commerce, the Commission found that the AMOLED DI

Products are sold in arms-length transactions to mobile device manufacturer, SEC, for use in both new mobile devices and as replacement displays, and to retailers for use as replacement displays. Appx208-209; Appx22-23; Appx251-252; Appx68762. The Commission rejected Samsung Display's assertion that the "Galaxy DI Products provide the *only* avenue for the AMOLED DI Products to operate properly and exploit the benefits of the Asserted Patents" because Samsung Display supplies patented displays, other than the AMOLED DI Products, to other mobile device manufacturers such as [redacted] and [redacted], and for other consumer products besides mobile phones. Appx22 (quoting Appx70084 (SDC Pet.) (emphasis in original)); Appx23-24. Thus, the Commission agreed with the ALJ's finding that the AMOLED DI Products themselves are products that can be exploited from an economic perspective, even apart from their use in the Galaxy DI Products. Appx23-24 (citing Appx209). The Commission found the fact that the AMOLED DI Products are separate articles of commerce weighs against extending the domestic industry beyond the AMOLED DI Products.

**b. Essential Component Analysis**

As for whether the patented technologies are essential to the downstream product, the ALJ found that the AMOLED DI Products are essential to the Galaxy DI Products, but the Commission modified the ALJ's analysis of this factor. Specifically, the Commission found the evidence shows that although *a display* is

essential to the Galaxy DI Products, other kinds of unpatented displays, *e.g.*, LCD or OLED displays, could be used in place of the AMOLED DI Products. Appx26 (citing Appx211; Appx60792 (Tr. (Bazelon) at 756:7-14); Appx68347-68348 (Q/A 60) (Herrington)). Thus, the Commission found "this factor is neutral at best, though the fact that the patented display technology in particular is not essential to the Galaxy DI Products would tend to weigh against considering investments in the Galaxy DI Products as investments with respect to the articles protected by the patent." Appx27-28.

#### c. Analysis of Relationship Between the Alleged Domestic Activities and the Patented Technology

With regard to the third factor, the ALJ rejected Samsung Display's argument that because the AMOLED DI Products cannot function on their own without a Galaxy smartphone, every investment in the Galaxy DI Products should be credited towards the domestic industry. Appx213; Appx215. Instead, the ALJ considered SEA's activities for the Galaxy DI Products compared to the patented display technologies. Appx28-29; Appx211-216. The ALJ found that Samsung Display did not meet its burden of demonstrating a connection between SEA's activities to the patented display technologies or the AMOLED DI Products and some of SEA's investments in the Galaxy DI Products are far removed from the patents and the AMOLED DI Products. Appx11; Appx211-216; *see infra*, Argument, Part III(C)(1). The Commission affirmed this finding and agreed with

the ALJ that this factor weighs against expanding the domestic industry beyond the AMOLED DI Products. Appx28-31.

In view of the record evidence, the Commission affirmed the ALJ's determination that the realities of the marketplace do not warrant extending the domestic industry beyond the patent-practicing articles to include SEA's investments in the downstream Galaxy DI Products.[5]

### 3. The Commission Found This Investigation Distinguishable from Those that Included Investments in Downstream Products

The Commission also found that the facts of this investigation are distinguishable from other investigations in which the Commission has extended the domestic industry to include investments related to downstream products. Appx26-27; Appx29-31; Appx216-219. The ALJ noted that this is not a case in which the complainant is relying on investments related to combining an imported component into a downstream product in the United States. Here, both the AMOLED DI Products and the Galaxy DI Products are manufactured and assembled overseas. Appx216 (citing *Video Game*, 2013 WL 12410036, at *41). The Commission noted that Samsung Display is also not relying on domestic

[5] Because the ALJ found the domestic industry does not include SEA's investments in the Galaxy DI Products, the ALJ did not make findings regarding the proper allocation and significance of those investments. Appx21 (n.20); Appx220.

investments in the customization of the AMOLED DI Products to ensure compatibility with the Galaxy DI Products, or vice versa. Appx28.

The Commission found that unlike IBM in *Magnetic Tape*, neither SEC nor SEA are licensees that practice or otherwise exploit the Asserted Patents in the United States. Appx30; Appx218-219 ("Nor does Complainant assert that customer has an relationship to the patents."); *see infra*, Argument, Part IV(B). Samsung Display and SEC's relationship with respect to the AMOLED DI Products is that of a component supplier and its customer. Appx24; Appx218-219; Appx66219 (Q/A 38-39) (Kim). "[T]hey are separate companies and conduct business in arm's lengths transactions." Appx217 (citing Appx60600 (Tr. (Kim) at 565:16-19); Appx60646; Appx60648 (Tr. (Cho) at 611:16-19, 613:5-8)). Indeed, Samsung Display was created "to make a new company that would operate independently from SEC in the display business." Appx66216 (Q/A 11) (Kim). Samsung Display's independence from SEC is "important" to Samsung Display because it "supplies not only SEC but also SEC's competitors, including customer and customer." Appx66216 (Q/A 11) (Kim); Appx68346 (Q/A 56) (Herrington).

Consistent with Samsung Display's independence, negotiations between Samsung Display and SEC for the sale of displays, including the AMOLED DI Products, are conducted at arm's length. Appx208-209 (citing Appx60600 (Tr. (Kim) at 565:16-19)); Appx46301 (n.33) (SDC Pre-Hr'g Br.). In addition, SEC

and Samsung Display's relationship is not "exclusive," as Samsung Display suggests, because Samsung Display sells AMOLED displays to SEC's competitors, such as [redacted] and [redacted]. *Compare* Appx66216 (Q/A 11) (Kim) *with* Blue Br. at 8-11. Conversely, Samsung Display is not the sole supplier of displays to SEC. Appx46301 (n.33) (SDC Pre-Hr'g Br.); Appx66630 (Q/A 29) (Herrington). Thus, the Commission found that the facts in this case distinguishable from other instances in which the realities of the marketplace supported expanding the domestic industry beyond the patent-practicing articles.

Accordingly, the Commission concluded that Samsung Display failed to demonstrate that a domestic industry exists under sections 337(a)(3)(A) or (B) based on SEA's investments in the Galaxy DI Products.

## SUMMARY OF THE ARGUMENT

Samsung Display's opening brief raises numerous arguments that were never presented to the ALJ and also contradict its positions in the underlying investigation. This Court reviews the Commission's final determination for legal errors based on the existing record, not to re-litigate a dispositive issue like domestic industry for which Samsung Display had the burden of proof. Yet, that is precisely what Samsung Display hopes to do with this appeal.

Before the ALJ, all parties recognized that Samsung Display's AMOLED DI Products are the only patent-practicing articles protected by the Asserted Patents. Samsung Display attempted to establish a domestic industry based on SDAL's and UDC's investments in the AMOLED DI Products but later abandoned this theory. Alternatively, Samsung Display pressed the ALJ and the Commission to apply the realities of the marketplace analysis as the sole basis for including in the domestic industry its customer's investments in downstream Galaxy smartphones, which incorporate the AMOLED DI Products purchased from Samsung Display. Samsung Display failed to meet its burden of proof under both domestic industry theories.

Instead of challenging the Commission's factual findings on domestic industry, Samsung Display raises new statutory arguments never presented to the ALJ and that contradict its positions below. For example, Samsung Display did

not argue before the ALJ that SEA's downstream Galaxy DI Products are themselves "articles protected by the patent[s]" under section 337(a)(2)-(3). Nor did it raise before the ALJ its new arguments as to why SEA's investments in the smartphones are "with respect to" or "related to" the patent-practicing AMOLED DI Products. These arguments are forfeited on appeal. Indeed, Samsung Display previously recognized that "articles protected by the patent" are not determined simply by meeting all claim limitations or any other rigid formula, but by an examination of the facts in each investigation, the article of commerce, and realities of the marketplace.

The Court should also not reward Samsung Display's calculated about-face to sidestep the substantial evidence review after Samsung Display failed to carry its burden of proof on domestic industry. In view of the record evidence, the Commission adopted the ALJ's findings that the AMOLED DI Products are separate articles of commerce and they can be and have been exploited from an economic perspective, even apart from their use in the Galaxy DI Products. The Commission also agreed with the ALJ that Samsung Display did not meet its burden of demonstrating a connection between SEA's domestic investments in the Galaxy DI Products and the patented display technologies or the AMOLED DI Products. These factual findings support the Commission's conclusion that the

realities of the marketplace do not warrant extending the domestic industry beyond the AMOLED DI Products.

Absent forfeiture, the Court should remand for the Commission to decide the merits of Samsung Display's statutory arguments in the first instance or reject them. Because there was no dispute that all the asserted patent claims are directed to OLED displays and that the AMOLED DI Products are the only patent-practicing articles, the Commission did not reach respondents' argument that Samsung Display's authorized sale of its AMOLED DI Products to SEC exhausted Samsung Display's patent rights in those displays and, thus, the Galaxy DI Products incorporating those purchased displays are not "articles protected by the patent[s]." That said, there should be no doubt that the longstanding doctrine of patent exhaustion limits what articles are "protected by" a patent. Samsung Display failed to establish before the Commission that SEA is a licensee that practices or exploits the Asserted Patents. Accordingly, even under Samsung Display's forfeited statutory interpretation, Samsung Display cannot rely on SEA's investments in unprotected smartphones to satisfy the domestic industry.

## ARGUMENT

## I. STANDARD OF REVIEW

The Commission's final determinations are reviewed under the Administrative Procedure Act ("APA"). *Broadcom Corp. v. ITC*, 28 F.4th 240, 249 (Fed. Cir. 2022) (citing 5 U.S.C. § 706). This Court reviews the Commission's legal determinations without deference and its factual findings for substantial evidence. *Id.* "Substantial evidence has been defined as more than a mere scintilla and as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

A complainant bringing a patent-based section 337 investigation "must prove that a domestic industry 'relating to the articles protected by the patent' exists or is in the process of being established." *Motorola Mobility, LLC v. ITC*, 737 F.3d 1345, 1351 (Fed. Cir. 2013) (quoting 19 U.S.C. § 1337(a)(2)). A domestic industry exists if there is, "with respect to the articles protected by the patent . . . (A) significant investment in plant and equipment; (B) significant employment of labor or capital; or (C) substantial investment in its exploitation, including engineering, research and development, or licensing." *Id*. (quoting 19 U.S.C. § 1337(a)(3)).

"Whether a complainant has satisfied the domestic industry requirement generally involves mixed questions of law and fact, reviewed de novo and for

substantial evidence, respectively." *Roku, Inc. v. ITC*, 90 F.4th 1367, 1372 (Fed. Cir. 2024).

This Court exercises its own "independent judgment" in deciding whether the Commission has acted within its statutory authority. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024).

## II. SAMSUNG DISPLAY NEVER RAISED ITS STATUTORY ARGUMENTS BEFORE THE ALJ AND, THUS, THOSE ARGUMENTS ARE FORFEITED

Samsung Display's statutory arguments were never raised before the ALJ and contradict its arguments below. First, Samsung Display never argued before the ALJ that the downstream Galaxy DI Products are themselves "articles protected by the patent[s]" under 19 U.S.C. § 1337(a)(2)-(3). Instead, all parties recognized that the AMOLED DI Products are the only patent-practicing articles and the Galaxy DI Products are non-patented downstream products. *See infra*, Subpart A. Second, before the ALJ, Samsung Display never proposed a bright-line rule that a downstream product, and investments therein, must be included in the domestic industry. Indeed, Samsung Display argued exactly the opposite. *See infra*, Subpart B. Third, for the first time on appeal, Samsung Display raises new arguments as to why SEA's investments in the Galaxy DI Products are "with respect to" or "related to" the patent-practicing AMOLED DI Products. *See infra*,

Subpart C. The Court should find Samsung Display forfeited all of these new statutory arguments.

### A. Samsung Display Forfeited Its New Argument that the Galaxy DI Products Are Themselves "Articles Protected by the Patent"

Samsung Display forfeited its argument that the Galaxy DI Products are themselves "articles protected by the patent[s]" by not raising it before the ALJ. *See generally* Appx46291-46306 (SDC Pre-Hr'g Br.); Appx68732-68737 (SDC Post-Hr'g Br.); Appx68953-68966 (SDC Post-Hr'g Reply). Pursuant to the ALJ's Ground Rules 11.2 and 14.2, "[a]ny contentions not set forth in detail in the [pre-hearing brief or post-hearing brief, respectively] shall be deemed abandoned or withdrawn." Appx15805; Appx15815. Further, this Court recognizes that failure to raise an issue before an ALJ during an investigation constitutes forfeiture of that issue. *Philip Morris Prods. S.A. v. ITC*, 63 F.4th 1328, 1336 (Fed. Cir. 2023) (determining complainant's argument about the Commission's duty to consult under section 337(b)(2) is forfeited for failing to raise it before the ALJ) (citing *Kyocera Wireless Corp. v. ITC*, 545 F.3d 1340, 1352 (Fed. Cir. 2008) (determining that an argument not set forth "until after the [ALJ] had made an initial determination" was "untimely and could properly be rejected on that ground alone")).

During the investigation, there was no dispute that Samsung Display's AMOLED DI Products are the "patent-practicing article[s]," and the Galaxy DI

Products are "non-patented (downstream) product[s]." Appx68733-68737 (SDC Post-Hr'g Br.) (stating the "patent-practicing article" is the AMOLED display but arguing that, under the Commission's "realities of the marketplace" precedent, the domestic industry should also include "investments *beyond* the patent-practicing article" in the "downstream Galaxy smartphones"); Appx70072-70073 (SDC Pet.) (citing *Magnetic Tape*, 2019 WL 2635509, at *32); *see* Appx46299 (SDC Pre-Hr'g Br.) ("[T]he article covered by the patent claims: the AMOLED DI Products.") (quotations omitted); Appx46726 (Resp. Revised Pre-Hr'g Br.); Appx60100-60101 (Tr. (Maas)[6] 67:24-68-1) ("[T]he parties agree that the AMOLED display module is an appropriate product to measure or evaluate the economic prong."); Appx60101 (Tr. (Maas) 68:24-25) ("It's the display module, not the Galaxy mobile phone that is the appropriate DI product.").

After it failed to satisfy the domestic industry requirement before the ALJ, Samsung Display presented a skeletal argument for the first time in its petition for Commission review that the Galaxy DI Products are themselves "articles protected by the patent." *Compare* Appx70046-70111 (SDC Pet.) (over 60 pages discussing the realities of the marketplace and *Magnetic Tape* factors) *with* Appx70111-70112

---

[6] Michael Maas was the Commission Investigative Attorney from the Office of Unfair Import Investigations participating in the investigation.

(two paragraphs discussing “articles protected by the patent”); *see* Appx70520 (Resp. Opp. to SDC Pet.) (“In an entirely new argument never presented to the ALJ, SDC contends Galaxy DI Products are properly considered ‘articles protected by the patent[.]’”). Because Samsung Display’s new argument that the Galaxy DI Products are themselves “articles protected by the patent[s]” was never raised and contradicts its position before the ALJ, this argument has been forfeited. *See Philip Morris*, 63 F.4th at 1336; *Broadcom*, 542 F.3d at 901 (finding complainant waived new argument presented on appeal that was not adequately preserved in the proceedings before the ALJ).

### B. Samsung Display Forfeited Its New Argument Advocating for a Bright-Line Rule as to the Scope of “Articles Protected by the Patent”

On appeal, Samsung Display presents another new argument to try to satisfy the domestic industry requirement, alleging a bright-line rule as to the scope of “articles protected by the patent.” *E.g.*, Blue Br. at 36 (“[T]he clause ‘articles protected by the patent’ reaches all products—whether end-user/consumer devices or components thereof—that are or contain authorized embodiments of the patented invention.”); *id.* at 40 (“[S]o long as each limitation corresponds or maps to a part of the product, the product is said to be ‘covered by’ or ‘fall within the scope of’ the patent claim . . . .”).

This statutory argument was never argued before the ALJ and indeed, Samsung Display argued exactly the opposite. While Samsung Display referred to the downstream Galaxy smartphones as "DI Products" because they each incorporate one of the patent-practicing AMOLED DI Products, it recognized the Commission's long-standing principle that "domestic industry (***including the definition of the article protected by the patent*** [under section 337(a)(3), 19 U.S.C. 1337(a)(3)])" is not determined by a rigid formula, but by "an examination of the facts in each investigation, the article of commerce, and realities of the marketplace." Appx68733-68734 (SDC Post-Hr'g Br.) (quoting *Certain Batteries & Electrochemical Devices Containing Composite Separators, Components Thereof, & Prods. Containing Same*, Inv. No. 337-TA-1087, Comm'n Notice, 2018 WL 4331965, at *2 (Sept. 7, 2018)) (emphasis added). Samsung Display argued that "[r]ather than looking to whether the asserted patents '***directly claim[ed]***' the downstream device," "the realities doctrine" justifies "extending investments ***beyond the patent-practicing article***" to include SEA's investments in the Galaxy DI Products. Appx68737 (SDC Post-Hr'g Br.) (emphasis added). Because Samsung Display's new statutory argument advocating for a bright-line rule as to the scope of the "articles protected by the patent" provision was never raised and contradicts its position before the ALJ, this argument has been

forfeited.[7] *See Philip Morris*, 63 F.4th at 1336; *Broadcom*, 542 F.3d at 901. Thus, Samsung Display cannot now be heard to argue that the Galaxy DI Products are "articles protected by the patent[s]."

### C. Samsung Display Forfeited Its New Arguments as to Why SEA's Investments in the Galaxy DI Products Are "with Respect to" the AMOLED DI Products

Not only did Samsung Display fail to argue that the Galaxy DI Products are patent-protected articles or that the statute requires a bright-line rule for including downstream products and their specific investments, Samsung Display's only timely-raised justification for extending the domestic industry to include the downstream Galaxy DI Products and SEA's investments rested entirely on the realities of the marketplace framework, not on its new interpretations of the "with respect to" or the "related to" provisions in section 337. *Compare* Blue Br. at 46-53 *with* Appx45903 (SDC Pre-Hr'g Br.) ("The realities of this marketplace thus support treating SEA's domestic investments as part of the DI."); Appx46293-

[7] Solely in response to respondents' patent exhaustion argument, Samsung Display took the position that "[p]atent exhaustion has no bearing on what qualifies as 'articles protected by [a] patent' for domestic industry purposes." Appx68739. But that response cannot be misconstrued as supporting the new bright-line rule that Samsung Display presents on appeal. *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) ("'A skeletal 'argument', really nothing more than an assertion, does not preserve a claim . . . Judges are not like pigs, hunting for truffles buried in briefs.'") (quoting, *inter alia*, *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

46299 ("The Realities of This Marketplace Support Inclusion of Investments in the Galaxy DI Products"); Appx68953 (SDC Post-Hr'g Reply) ("***This is a quintessential realities-of-the-marketplace case***, falling squarely within Commission precedent like *Magnetic Tape* and *Sleep-Disordered*.") (emphasis added); Appx60101-60102 (Tr. (Maas) 68:25-69:2); Appx60505-60514 (Tr. (Vander Veen) 471:5-480:9) (Samsung Display's industry expert testifying that investments related to the Galaxy smartphones should be included in the domestic industry based on the *Magnetic Tape* factors); Appx65509-65511 (Q/A 20-26) (Vander Veen) (same).

In its petition for Commission review, Samsung Display again argued that the realities of the marketplace is the proper legal framework for determining whether to extend the domestic industry beyond the patent-practicing AMOLED DI Products to include SEA's investments in the downstream Galaxy DI Products. Appx70047 (SDC Pet.) ("[T]he Commission has consistently held that, under the realities of the marketplace, the downstream product (the Samsung Galaxy smartphone) is properly considered part of the domestic industry."); *see* Appx70046-70111 (SDC Pet.). Nowhere in its 100-page petition did Samsung Display present the new arguments that it now raises on appeal as to why SEA's investments in the Galaxy DI Products are "with respect to the articles protected by the patent," *i.e.*, the AMOLED DI Products. After insisting on the application of

the realities of the marketplace framework, Samsung Display now offers new statutory arguments to justify inclusion of investments related to its customer's downstream products. Blue Br. at 46-53.

This Court has recognized that a party's failure to make a specific argument in its petition for Commission review constitutes forfeiture. *See Philip Morris*, 63 F.4th at 1336 (citing *Guangdong Alison Hi-Tech Co. v. ITC*, 936 F.3d 1353, 1362 (Fed. Cir. 2019); 19 C.F.R. § 210.43(b)(2); and *Finnigan Corp. v. ITC*, 180 F.3d 1354, 1362-63 (Fed. Cir. 1999) (declining to consider a new argument not first presented to the Commission)). Here, not only did Samsung Display fail to raise before the ALJ its new arguments as to why SEA's investments in the Galaxy DI Products are "with respect to the articles protected by the patent," but it also failed to raise it before the Commission in its petition. Appx15805; Appx15815; 19 C.F.R. § 210.43(b) (specifying that "[a]ny issue not raised in a petition for review will be deemed to have been abandoned").

## III. SAMSUNG DISPLAY CRITICISM OF THE REALITIES OF THE MARKETPLACE FRAMEWORK AND THE *MAGNETIC TAPE* FACTORS ARE FORFEITED AND UNFOUNDED

In the proceeding below, Samsung Display argued "[t]his is a quintessential realities-of-the-marketplace case, falling squarely within Commission precedent like *Magnetic Tape*. . . ." Appx68953 (SDC Post-Hr'g Reply). Now on appeal, Samsung Display argues that *Magnetic Tape* is "inapposite" and "indeterminate."

Blue Br. at 29, 59. Samsung Display forfeited these criticisms of *Magnetic Tape* for failing to raise them before the ALJ and the Commission.[8] The Court should not reward Samsung Display's calculated about-face to sidestep the substantial evidence review after Samsung Display failed to carry its burden of proof on domestic industry. *See Finnigan*, 180 F.3d at 1363 ("A party's argument should not be a moving target.").

Even absent forfeiture, Samsung Display's new "degree of connection test," Blue Br. at 52, improperly focuses on the degree of connection between two products (*i.e.*, the downstream product and the patent-protected article) as opposed to the relationship between a complainant's investments or employment of labor or capital in the United States and the patent-protected article as required by the statute. *See id.* at 50-53. Substantial evidence supports the Commission's finding that Samsung Display did not meet its burden of demonstrating a connection between SEA's domestic investments in the downstream Galaxy DI Products and the AMOLED DI Products or the Asserted Patents.

---

[8] Samsung Display offers no explanation why this Court should not find its new argument forfeited; reserving issues for a reply brief is impermissible. *SmithKline Beecham*, 439 F.3d at 1319-20 (arguments not raised in the opening brief are waived).

### A. Samsung Display Forfeited Its Argument that the *Magnetic Tape* Factors Are Inapplicable

In the underlying investigation, Samsung Display recognized that the Commission has "[a] long—previously unbroken—line of decisions applying the realities-of-the-marketplace framework" to determine if investments in a "non-patented (or downstream) product" can be "properly considered part of the domestic industry." Appx70072-70073 (SDC Pet.) (citing *Magnetic Tape*, 2019 WL 2635509, at *32). It pressed the ALJ to apply that framework in analyzing SEA's expenditures in the Galaxy smartphones. *See supra*, Part II(C). In its petition for Commission review, Samsung Display challenged the ALJ's analysis under the *Magnetic Tape* factors and continued to insist on the application of the realities of the marketplace framework. Appx70046-70111 (SDC Pet.).

For the first time on appeal, Samsung Display criticizes and misconstrues the very framework that it advocated for below. *E.g.*, Blue Br. at 54-55 (arguing the *Magnetic Tape* test is "fundamentally untethered to the statutory language"); *see N. Telecom Ltd. v. Samsung Elecs. Co.*, *Ltd.*, 215 F.3d 1281, 1290 (Fed. Cir. 2000) (noting with "extreme disfavor" Samsung's presentation of a legal position that differed from the position that Samsung advanced at trial) (citing *Key Pharms. v. Hercon Labs. Corp.*, 161 F.3d 709, 714-15 (Fed. Cir. 1998)). Samsung Display now argues that *Magnetic Tape* is inapplicable because it is "designed to evaluate whether investments in *non-patent-practicing* articles . . . have a sufficient

connection to patent-practicing articles to be considered investments 'with respect to' the latter articles." Blue Br. at 29. But, as discussed above, *supra*, Part II(C), Samsung Display argued exactly the opposite below. Accordingly, Samsung Display forfeited any argument that *Magnetic Tape* is inapplicable for failing to raise it before the ALJ and the Commission. *See* 19 C.F.R. § 210.43(b)(2); *Philip Morris*, 63 F.4th at 1336; *Finnigan*, 180 F.3d at 1362-63.

### B. Samsung Display's New "Degree of Connection Test" Is Forfeited and Untethered to the Statute

Notwithstanding its forfeited criticism of *Magnetic Tape*, Samsung Display concedes some "degree of connection analysis" is appropriate and consistent with the statutory language when analyzing whether downstream products are "articles protected by the patent." Blue Br. at 51; *see id.* at 52-53, 55. Samsung Display assumes that *all* downstream products, and investments therein, should be included in the domestic industry as long as those products have some "connection" to the patented article. *Id*. at 49-50. It asserts that "connection" is satisfied here because the AMOLED DI Products are "customized" for the Galaxy DI Products and provide central and critical functionality to those smartphones. *Id*. at 52-53. First, as with many of its other arguments, Samsung Display never proposed a "degree of connection test" to the ALJ or the Commission and, thus, the Court should find this new test forfeited. *Id*. at 52; *see* 19 C.F.R. § 210.43(b)(2); *Philip Morris*, 63 F.4th at 1336.

Second, Samsung Display's "degree-of-connection test" improperly focuses on the "connection" between two products (*i.e.*, the downstream product and the patent-protected article) without regard to the nature of the investment or the scope of the patented technology. *See, e.g.*, Blue Br. at 52-53 (looking at whether the displays are essential or customized components of smartphones). Section 337 requires that the domestic investments and activities "relat[e] to" or are "with respect to" the patent-protected articles. Appx17-18. In both subsections (a)(2) and (a)(3) of section 337, the phrases "relating to" and "with respect to" the articles protected by the patent, clearly modifies the term "industry." 19 U.S.C. § 1337(a)(2)-(3). The Commission previously explained:

> The "article" or "the article protected by the patent" is the linchpin of the definition of a domestic industry of paragraph (a)(3), with "respect" to which all relevant activities are performed and all relevant investments are made.

*Certain Diltiazem Hydrochloride and Diltiazem Preparations*, Inv. No. 337-TA-349, FID, 1995 WL 945191, at *76 (Feb. 1, 1995). The Commission thus examines the domestic industry from the standpoint of whether the relevant investments "relat[e] to" or are "with respect to" the articles protected by the patent. Appx17-18. Here, Samsung Display does not rely on any SEA investments related to the displays (*e.g.*, development, customization, or integration of the AMOLED DI Products for the Galaxy DI Products). Appx28-

31; Appx214-216. Nearly all of those display activities occur outside of the United States and could not be considered "domestic" investments. Appx11; Appx21; Appx216-217.

*Motorola* does not support Samsung Display's argument that it is entitled to rely on investments in downstream products. Blue Br. at 51-52 (citing *Motorola*, 737 F.3d at 1345). As Samsung Display acknowledges, the claimed invention in *Motorola* was the smartphone, not just the operating system running on the smartphone although the operating system was found to be a significant part of the smartphone. *Id.* (citing *Motorola*, 737 F.3d at 1347, 1351). The Court affirmed the Commission's finding that investments related to the operating system on the smartphone was "with respect to" the patented article. *Motorola*, 737 F.3d at 1351 ("An investment directed to a specifically tailored, significant aspect of the article is still directed to the article."). But, here, Samsung Display is not relying on SEA investments related to any part of the patented display.

As discussed below, substantial evidence supports the Commission's finding that Samsung Display did not meet its burden of demonstrating a connection between SEA's domestic investments in the Galaxy DI Products and the AMOLED DI Products or the Asserted Patents.

### C. Substantial Evidence Supports the Commission's Finding that the Realities of the Marketplace Do Not Warrant Extending the Domestic Industry Beyond the Displays

The realities of the marketplace analysis, as summarized by the Commission in *Magnetic Tape*, address the statutory requirement that the domestic industry must be with respect to the articles protected by the patent. Appx17-18; Appx205-208. Specifically, under *Magnetic Tape*, the Commission looks at three factors to determine whether the realities of the marketplace support finding that investments other than in the patented technology or patented article may be considered investments "with respect to the articles protected by the patent." Appx18 (quoting 19 U.S.C. § 1337(a)(3)). Samsung Display challenges the Commission's determination under the *Magnetic Tape* factors and improperly asks this Court to reweigh the evidence without showing the Commission's factual findings are not supported by substantial evidence. Blue Br. at 54-62. But the Court "must affirm a Commission determination if it is reasonable and supported by the record as a whole, even if some evidence detracts from the Commission's conclusion."[9] *Spansion, Inc. v. ITC*, 629 F.3d 1331, 1344 (Fed. Cir. 2010) (quotation omitted).

---

[9] To the extent that the Court disagrees, the investigation should be remanded to the Commission to make findings regarding the proper allocation and significance of SEA's U.S. expenditures in the first instance. Appx21 (n.20).

### 1. The Record as a Whole Supports the Commission's Determination Regarding the *Magnetic Tape* Factors

Regarding the first *Magnetic Tape* factor (whether the patented technology is sold as a separate entity or article of commerce), the Commission rejected Samsung Display's assertion that the "Galaxy DI Products provide the *only* avenue for the AMOLED DI Products to operate properly and exploit the benefits of the Asserted Patents." Appx22 (quoting Appx70084 (SDC Pet.)); *see* Appx209-210. The Commission found that there is no dispute that the articles that Samsung Display seeks to exclude through this investigation are themselves AMOLED displays as opposed to a downstream product. Appx209. Samsung Display does not challenge the Commission's findings that the AMOLED DI Products are sold in arms-length transactions to SEC for use in Galaxy smartphones and to retailers for use as replacement displays.[10] Appx208-209; Appx22-23. Samsung Display also does not challenge the Commission finding that the patented display technologies incorporated in the AMOLED DI Products are sold separately to other device manufacturers, like [redacted] and [redacted]. Appx23; Appx217; Appx219. Moreover, the Commission noted that the asserted patent claims are not limited to any specific application even if the disclosed pixel structures are useful in

[10] Samsung Display asserts that the AMOLED DI Products "are not sold to any customers other than SEC," Blue Br. at 55-56, but the record clearly shows that it is not the case. Appx251-252; Appx68762 (SDC Post-Hr'g Br.).

smartphones. Appx23. Thus, the Commission agreed with the ALJ's findings that the patented display technologies and the AMOLED DI Products can be and have been exploited from an economic perspective, even apart from their use in a Galaxy smartphone. Appx23-24 (citing Appx209).

As for the second *Magnetic Tape* factor (whether the patented technology is an essential component of the downstream product), the Commission found that while *a display* is essential to a smartphone, other kinds of displays (*e.g.*, OLED or LCD displays) can be used in place of Samsung Display's AMOLED display. Appx26 (citing Appx211 (finding the evidence shows that "in theory, the Galaxy DI Products could be modified to operate with different displays"); Appx60792 (Tr. (Bazelon) at 756:7-14) (confidential testimony regarding alternative displays used by retailers); Appx68347-68348 (Q/A 60) (Herrington) (noting that Samsung Display's position that the AMOLED DI Products are an essential component in the Galaxy DI Products contradicts its expert's opinion regarding available alternative displays); Appx80023). The Commission reasoned that some modification may be needed to make those other displays work with the Galaxy DI Products, but modifications to the Galaxy DI Products were also needed to accommodate the AMOLED DI Products. Appx26.

Lastly, for the third *Magnetic Tape* factor (whether the domestic activities have a direct relationship to exploitation of the patented technology), the ALJ

rejected Samsung Display's argument that because the AMOLED DI Products cannot function on their own without a Galaxy smartphone, every investment in the Galaxy DI Products should be credited towards the domestic industry. Appx213; Appx215. Instead, the ALJ reasoned that "there must be some showing that the domestic industry investments either have a direct relationship to the exploitation of the patented technology or are necessary to ensure that the patented articles could be used by consumers." Appx213-214.

The Commission has, in prior investigations, excluded or otherwise limited consideration of investments other than in the patented technology or patented article where the connection of those investments to the patented technology was too attenuated. Appx29 (citing *Video Game*, 2013 WL 12410036, at *40-42). For example, in *Magnetic Tape*, the Commission explained that licensee IBM was not simply purchasing components from complainant Sony and incorporating them into a downstream product. Appx30. Rather, IBM practiced the asserted patents by developing its own proprietary storage format for its patent-protected tape media and its unprotected tape drives. Appx30 (citing *Magnetic Tape*, 2019 WL 2635509, at *34-35). There, the Commission found that Sony had established that IBM's research and development work in developing the tape drive was devoted to improving the interoperability of the patented tape media with the drive. Appx30 (citing *Magnetic Tape*, 2019 WL 2635509, at *34-35); Appx213. Based on the

evidence in the record, the Commission concluded that IBM's investments in both the tape drive and media had a "direct relationship to exploitation of the patented technology." Appx30 (citing *Magnetic Tape*, 2019 WL 2635509, at *34).

In this case, the ALJ found that Samsung Display did not meet its burden of demonstrating a connection between SEA's domestic activities in the Galaxy DI Products and the patented display technologies or the AMOLED DI Products. Appx215 (finding Samsung Display failed to "demonstrate how any of [SEA's] activities relate to the exploitation of the patented technologies or show how the investments are necessary to ensure that the patented articles (*i.e.* the displays) could be used by consumers"); Appx28-29. The ALJ found that Samsung Display's expert, Dr. Vander Veen, placed SEA's investments into [redacted] functional groups but he failed to articulate the relationship between the patented technology and the activities performed by these groups and made only a "conclusory allegation that '[e]ach of these U.S.-based activities of SEA and its employees . . . is essential to the commercialization and success of the Galaxy DI Products in the U.S. market.'"[11] Appx214-215 (citing and quoting Appx68740-68742 (SDC Post-

[11] Samsung Display attempted to provide additional arguments and evidence to support its contention that SEA's U.S. activities relate to the patented displays and technologies in its petition for Commission review. The Commission found those new arguments and evidence were waived. Appx28 (n.23); *compare* Appx70058-70125 (SDC Pet.) (nearly 70 pages devoted to SEA's domestic

Hr'g Br.)). The ALJ noted that "[s]uch a showing would be particularly helpful here where some of the claimed investments appear to be far removed from the patented technology." Appx215-216 (finding Samsung Display did not provide adequate descriptions of the activities of SEA's functional groups and how they related to bringing the Galaxy DI Products to market). For instance, the Commission found that SEA's activities in ensuring the smartphones can function function in the United States does not affect a consumer's ability to view information or use the display and does not relate to incorporation of the display into the phone. Appx28 (citing Appx214-15; Appx70091-70099 (SDC Pet.); Appx60495 (Tr. (Vander Veen) at 461:6-14 (testifying "there is additional work that is done, at least some of the [imported] phones, for example, flashing software, carrier specific software and so forth on those devices"))).

Samsung Display submits that SEA provides "feedback" from consumers, Blue Br. at 9, but the evidence does not show that feedback has anything to do with the displays or the patented technologies. Appx60585-60586 (Tr. (Pyon) at 550:21-551:8). Indeed, the record evidence shows that SEA has little to no interaction with the displays. *See* Appx209; Appx61021 (Tr. (Herrington) at

---

industry) *with* Appx68733-68744 (SDC Post-Hr'g Br.) (less than 11 pages devoted to SEA's domestic industry).

984:7-23); Appx68346-68347 (Q/A 55, 59) (Herrington). That is not surprising given that SEA is responsible for the importation of complete phones and displays for sale. *See* Blue Br. at 9; Appx11; Appx209; Appx217; Appx68353-68354 (Q/A 76, 78) (Herrington).

The Commission's factual findings support its conclusion that the realities of the marketplace do not warrant extending the domestic industry beyond the patent-practicing AMOLED DI Products to include SEA's investments in the downstream Galaxy DI Products.

#### 2. There Is No Support for Samsung Display's Criticism of the *Magnetic Tape* Factors

Samsung Display criticizes the *Magnetic Tape* factors for focusing on the patented technology rather than the articles protected by the patent, but this is a red herring. Blue Br. at 54 (citing Appx20-31). Samsung Display had the burden to prove a domestic industry exists. As discussed above, whether the comparison is with the patented article or with the patented technology that is found in the article, Samsung Display failed to carry its burden of proof in showing that SEA's investments in commercializing the imported Galaxy DI Products specifically related to the patented displays or the patented display technologies, as opposed to the downstream products generally.

Samsung Display also criticizes the *Magnetic Tape* factors for yielding inconsistent outcomes. Blue Br. at 60-61. But it relies solely on two investigations

that were terminated based on settlement agreements before the Commission reached a final determination on the merits.[12] *Id*. Irrespective of the fact that the Commission did not adopt the ALJs' domestic industry analyses, differences between the two investigations led to specific fact-findings underlying the determinations of the appropriate articles relevant to the domestic industry. While the question of what qualifies as investments "with respect to the articles protected by the patent" may ultimately be one of law, an analysis of the realities of the marketplace involves subsidiary questions of fact. This is made clear by the analyses in Investigation Nos. 337-TA-1379 and -1380, each of which involved different relationships between what was covered by the asserted patents and the investments that the complainants sought to rely on for the domestic industry. Those investigations also involved different market realities with respect to what

[12] *See Certain Video Capable Electronic Devices, Including Computers, Streaming Devices, Televisions, Cameras, and Components and Modules Thereof,* Inv. No. 337-TA-1379, Notice of a Commission Determination to Ratify the Prior Commission Actions in This Investigation and to Grant a Joint Motion to Terminate the Investigation on the Basis of Settlement, 2025 WL 1250782, at *3 (Apr. 22, 2025); *Certain Video Capable Electronic Devices, Including Computers, Streaming Devices, Televisions, and Components and Modules Thereof*, Inv. No. 337-TA-1380, Notice of a Commission Determination to Grant a Joint Motion to Terminate the Investigation in Its Entirety Based on Settlement, 2025 WL 1250809, at *3 (Apr. 23, 2025).

was ultimately determined by the ALJs to be the appropriate articles protected by the patents.[13]

## IV. ABSENT FORFEITURE, THE COURT SHOULD REMAND FOR THE COMMISSION TO HEAR AND DECIDE SAMSUNG DISPLAY'S STATUTORY ARGUMENTS IN THE FIRST INSTANCE OR REJECT THEM

Since Samsung Display's statutory arguments were never presented before the ALJ and the Commission did not decide their merits, the proper course of action for the Court is to refuse to review them. *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1344 (Fed. Cir. 2011) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.") (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)).

---

[13] In Investigation No. 337-TA-1379, the ALJ made specific fact-findings for the *Magnetic Tape* factors *in the event* the Commission determined the chipsets and Android operating system used in video encoding and decoding were the "articles protected by" the asserted patents instead of the downstream computers and devices that incorporated the chipsets and operating system. Initial Determination, 2025 WL 689508, at *55-60 (Jan. 29, 2025). The ALJ, however, rejected respondent Amazon's contention that the "articles protected by" the asserted patents were the chipsets and Android operating system because the record undisputedly showed that "video-capable end-user electronic devices, including the Samsung Galaxy smartphone, Microsoft Surface computer, and Microsoft Xbox gaming device, are the devices that are alleged to be covered by the asserted claims." *Id.* at *53-54. In contrast to the claims at issue in Inv. No. 337-TA-1379, which covered end-user electronic devices implementing the video encoding and decoding, *id.* at *54, the asserted claims at issue in this investigation undisputedly cover only the structural features of AMOLED displays. Appx20-21 (text & n.19); *see supra*, Statement of the Case, Part I.

If the Court believes Samsung Display's statutory arguments have merit, it should remand for the Commission to decide them in the first instance and to decide alternative arguments that respondents made below as to why Samsung Display cannot rely on SEA's investments in downstream smartphones to satisfy the domestic industry. A remand would discourage parties like Samsung Display from raising new arguments on appeal that circumvent the administrative procedures after failing to satisfy their burden of proof in the investigation below and avoid potential issues under the APA. Alternatively, as discussed below, even under Samsung Display's forfeited statutory interpretation, the Court should reject Samsung Display's argument that the Galaxy DI Products are themselves "articles protected by the patent[s]" and its new arguments as to why SEA's investments in the Galaxy DI Products are "with respect to" the patent-practicing AMOLED DI Products.

### A. Samsung Display's Sale of the AMOLED DI Products Exhausted Its Patent Rights in Those Products and, Thus, the Downstream Galaxy DI Products Incorporating Those Products Are Not "Articles Protected By the [Asserted Patents]"[14]

Samsung Display does not dispute the Commission's finding that it sold the AMOLED DI Products to SEC overseas in arm's-length transactions. Blue Br. at

[14] The Commission agrees with Samsung Display that the plain meaning of "article" is "a material thing" and the plain meaning of "protected" is "covered" or "shielded." Blue Br. at 33-35; *see ClearCorrect Operating, LLC v. ITC*, 810 F.3d

9; Appx22-23; Appx208-209 (citing Appx60600 (Tr. (Kim) at 565:16-19); Appx60646 (Tr. (Cho) at 611:16-19); Appx60648 (Tr. (Cho) at 613:5-8)); Appx217-219. Under clear Supreme Court precedent, the displays that Samsung Display sold to SEC in arm's-length transactions stand on the same footing as unpatented goods. *See Impression Prods. Inc. v. Lexmark Int'l, Inc.*, 581 U.S. 360, 373 (2017); *id.* at 370 ("When a patentee chooses to sell an item, that product is no longer within the limits of the monopoly and instead becomes the private, individual property of the purchaser, with the rights and benefits that come along with ownership.") (quotations omitted). Any patent protection afforded to the displays before the sale was extinguished by the authorized sale to SEC. *See id.* at 374-75. Thus, Samsung Display's initial authorized sale of its AMOLED DI Products to SEC in Korea exhausted the patent protection and took those displays outside of the patent monopoly. *See id.* at 373-74; *Quanta Comput., Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 631 (2008) (citing *United States v. Univis Lens Co.*, 316 U.S. 241, 249 (1942)).

As respondents argued below, once Samsung Display's AMOLED DI Products were no longer protected by the Asserted Patents, the downstream Galaxy

---

1283, 1290-99 (Fed. Cir. 2015). Nonetheless, as explained herein, Samsung Display's AMOLED DI Products were no longer "protected by" the Asserted Patents once they were sold to SEC.

DI Products incorporating the purchased displays were also *not* protected by the Asserted Patents and SEA's domestic investments in the Galaxy DI Products are not "with respect to" or "related to" any article protected by the Asserted Patents. Appx46727-46729; Appx68535-68536. The Supreme Court's illustration of the exhaustion principle in the context of the auto repair industry supports the Commission's position. In *Impression Products*, the Court noted that repair shop owners are free to repair and resell used vehicles because each vehicle and all the parts therein are no longer patent-protected after the first sale. 581 U.S. at 372. Like a vehicle that incorporates many components and practices a large number of patents, "[a] generic smartphone assembled from various high-tech components could practice an estimated 250,000 patents." *See id* (quoting argument from *amici curiae*). As the Supreme Court observed, if companies, like Samsung Display, could assert patent rights after the first sale to a device manufacturer, "the smooth flow of commerce would sputter." *Id.* Thus, contrary to Samsung Display's argument, "an article's position in the supply chain" could limit whether the article is "protected by" the patent. Blue Br. at 32-33 (arguing "the provision encompasses any identified 'articles protected' by the 'concerned' patent (*i.e.*, the asserted patent or patents), 'without any limitation' on an article's position in the supply chain") (citation omitted).

Irrespective of Samsung Display's ability to sue and exclude other infringing products, the sale of its patented displays to downstream manufacturers extinguishes all patent rights in those displays. When SEA imported the Galaxy smartphones and replacement displays into the United States, those phones and displays were not protected by the Asserted Patents. SEC and SEA were free to use, sell, or import their phones and displays as they wish. Appx66219 (Q/A 39) (Kim).

Samsung Display argues that the Galaxy DI Products are "protected" because they contain "authorized embodiments of the patented invention." Blue Br. at 36. But as the Supreme Court has held, the right to use a patented good exists independently of the Patent Act and transfers upon sale. *Impression Prods.*, 581 U.S. at 374. Thus, SEC did not need authorization from Samsung Display to use its purchased displays to make its Galaxy smartphones because the right to use transferred to SEC upon sale. *See* Appx66219 (Q/A 39) (Kim); *Video Game*, 2013 WL 12410036, at *46 (finding customers do not need a license to operate amusement attractions they purchased from complainant under the exhaustion principle; domestic industry includes complainant's investments related to the toy wands, which were protected by the patents, but does not include investments as to the entire amusement attraction).

Samsung Display argued below that the exhaustion doctrine is irrelevant to interpreting the "protected by" provision under section 337.[15] Appx68739. The Commission's understanding of "protected by the patent" under section 337(a)(2) and (3) accords with Supreme Court decisions on the exhaustion doctrine and its effect on what products are protected by a patent. For example, the Supreme Court in *Bowman v. Monsanto Co.* explained that while the exhaustion doctrine extinguishes a patentee's rights in a patented product following an authorized sale, the doctrine does not extend to the right to make a new copy of the "thing" the "***patent protects***." 569 U.S. 278, 287 (2013) (emphasis added). Thus, to the extent the Court determines to consider Samsung Display's new statutory arguments on

---

[15] Samsung Display also argued below that respondents' patent exhaustion argument contradicts Commission decisions crediting "post-first-sale investments" for [domestic industry] (such as in repair and service)." Appx68739. The Commission has credited toward the establishment of a domestic industry investments in labor or capital and/or plant and equipment related to service and repair operations performed in the United States by a complainant, its licensee, or contractor with respect to the patented articles. *See, e.g.*, *Certain Automated Put Walls and Automated Storage and Retrieval Sys., Associated Vehicles, Associated Control Software, and Component Parts Thereof*, Inv. No. 337-TA-1293, Comm'n Op., 2023 WL 5426449 at *6, *8 (July 31, 2023), *aff'd*, *HC Robotics v. ITC*, 2025 WL 2424283 (Fed. Cir. Aug. 17, 2025); *Certain Road Milling Machines and Components Thereof*, Inv. No. 337-TA-1067, FID, 2018 WL 6011830, at *260-66 (Oct. 1, 2018), *unreviewed in relevant part*, Comm'n Notice, 2021 WL 5231399 (Nov. 4, 2021). Here, however, Samsung Display does not rely on such investments related to service and repair of the AMOLED DI Products.

appeal in the first instance, the Court should find that the longstanding doctrine of patent exhaustion limits what articles are "protected by" a patent.

### B. Samsung Display Failed to Establish that SEA Is a Licensee and, thus, the Downstream Galaxy DI Products Are Not Articles Protected by the Asserted Patents

Consistent with this Court's precedent, the Commission has held that a complainant in a patent-based section 337 investigation must demonstrate that "it is practicing, licensing, or otherwise exploiting the patents at issue." *Certain Elec. Devices, Including Streaming Players, Televisions, Set Top Boxes, Remote Controllers, and Components Thereof*, Inv. No. 337-TA-1200 ("*Elec. Devices*"), Comm'n Op., 2021 WL 5822291, at *19 (Dec. 3, 2021) (citing 19 U.S.C. § 1337(a)(2)-(3) and citing *Certain Microsphere Adhesives, Process for Making Same, and Products Containing Same, Including Self-Stick Repositionable Notes,* Inv. No. 337-TA-366, Comm'n Op., 1996 WL 1056095, at *4 (Jan. 16, 1996)), *aff'd*, *Roku*, 90 F.4th 1367; *Broadcom*, 28 F.4th at 249-50 (explaining that the "articles protected by the patent" clause requires a complainant to establish that "it practices at least one claim of the asserted patent"). A complainant must identify "actual 'articles protected by the patent.'" *Microsoft Corp. v. ITC*, 731 F.3d 1354, 1361-62 (Fed. Cir. 2013) (quoting 19 U.S.C. § 1337(a)(2)-(3)). In the investigation below, Samsung Display identified the actual "articles protected by the patent[s]" as the AMOLED DI Products but it abandoned all reliance on

SDAL's and UDC's investments with respect to the AMOLED DI Products to establish a domestic industry. *See supra*, Part II(A) and Statement of the Case, Part III(B).

On appeal, Samsung Display seeks to rely solely on third-party SEA's investments in bringing to market foreign-made Galaxy smartphones assembled by SEC that incorporate purchased displays.[16] Section 337 does not specify that the domestic industry must be comprised of one particular entity, *i.e.*, the complainant. It is well established that a complainant may rely on the domestic activities of its licensee or subcontractor to establish a domestic industry.[17] *See Certain Optical Disc Drives, Components Thereof, & Prods. Containing Same*, Inv. No. 337-TA-897, Comm'n Order, 2014 WL 12942528, at *3 (Sept. 29, 2014) ("The Commission has consistently interpreted the statute as allowing a complainant to rely on the activities of its licensees in attempting to show the existence of a domestic industry."); *Certain Male Prophylactic Devices*, Inv. No.

---

[16] Samsung Display has abandoned any reliance on SDAL's and UDC's activities and it would be inappropriate for the Court to consider those investments, either separately or combined with SEA's investments as Samsung Display has suggested in its brief. Blue Br. at 17-18, 23 n.5; *see supra*, Statement of the Case, Part III(A) n.4.

[17] That a licensee's products could be "protected by the patent" accords with the exhaustion doctrine, which recognizes that a patentee can impose restrictions on a licensee. *See Impression Prods.*, 581 U.S. at 375-76 (recognizing that a patentee's licensees "expand[s] the club of authorized producers and sellers").

337-TA-546, Comm'n Op., 2008 WL 2952724, at *24 (Aug. 1, 2007) ("The relevant domestic activities to be considered may include those of a complainant's subcontractor." (citation omitted)); *but cf. Lelo Inc. v. ITC*, 786 F.3d 879, 884 (Fed. Cir. 2015) (holding that a complainant may rely on a subcontractor's domestic operations performing contracted services but it may not rely on the purchase of components from U.S. suppliers).

However, here, Samsung Display has failed to establish that SEA is a licensee that practices the Asserted Patents. Appx30; Appx218-219 ("Nor does Complainant assert that customer has an relationship to the patents.") (citing Appx60455 (Tr. (Vander Veen) at 421:11-14)); Appx66220-66221 (Q/A 52-59) (Kim) (testifying regarding licensees to the Asserted Patents); Appx497 (Complaint, ¶ 330) (citing Appx1333-1334 (Exh. 99C: List of licensees to the Asserted Patents)). Recently, this Court in *Roku*, affirmed the Commission's finding that the complainant satisfied the domestic industry requirement based on the complainant's own substantial domestic investments in engineering and research and development for proprietary software, which practiced the patent at issue when implemented on licensed televisions made by Samsung, and in the integration of the proprietary software on the licensed televisions. 90 F.4th at 1373-74; *see Elec. Devices*, FID, 2021 WL 3185836, at *38, *69, *82, *87 (July 9, 2021). Unlike *Roku*, Samsung Display does not rely on its own investments or

those of a licensee in the development, production, or improvement of its patent-protected displays, nor in the integration of its displays into a downstream product to satisfy the domestic industry requirement. Appx23 (n.21).

As explained above, SEC buys the AMOLED DI Products from Samsung Display for incorporation into Galaxy smartphones and the smartphones are imported into the United States by SEA. Appx11. Had Samsung Display licensed its patents to SEA to produce displays for downstream products, then the domestic industry could include SEA's domestic activities with respect to those displays. But, here, the ALJ found that substantially all activities related to the displays, including the assembly of the displays in the Galaxy smartphones, occur overseas such that complete displays and phones are imported into the United States. Appx11; Appx216-217. To be clear, the flaw in Samsung Display's domestic industry argument is neither that the displays must be manufactured in the United States nor that a complainant cannot rely on investments of its licensees, but as discussed above, the flaw is that Samsung Display failed to show a connection between non-party SEA's domestic investments and the patented articles (here, the AMOLED DI Products) or the patented display technologies.

### C. There Is No Inconsistency Between the Commission's Readings of Section 337(a)(1) and Section 337(a)(2)-(3)

Samsung Display argues that the Commission's reading of section 337(a)(2)-(3) "is irreconcilable" with its reading of section 337(a)(1). Blue Br. at

37, 40. Not so. Just as a complainant's patent rights may be exhausted with respect to accused products purchased from a licensee and, thus, a purchaser-respondent does not infringe the patent at issue, a complainant's patent rights in an authorized sale of its patented products may be extinguished and, thus, those products are no longer "protected by the patent" for purposes of domestic industry. *See Tessera, Inc. v. ITC*, 646 F.3d 1357, 1363, 1370-71 (Fed. Cir. 2011) (holding the complainant's patent rights were exhausted as to all accused products purchased from complainant's licensees).

While this Court in *Interdigital Communications, LLC v. ITC* focused on licensing and research and development investments pursuant to subparagraph (C) of section 337(a)(3), its observations regarding the phrase "articles protected by the patent" is also relevant to subparagraphs (A) and (B). 707 F.3d 1295, 1298-99 (Fed. Cir. 2013). There, the Court found the domestic industry was satisfied through complainant's own investments in licensing its 3G wireless technology and patents to handset and device manufacturers and the patented 3G technology was found in the products that it had licensed. *Id*. at 1298-99. Thus, the Court determined the "articles protected by the patent" requirement was satisfied because "the patents in suit protect the technology that is … ***found*** in the products that [complainant] ***has licensed and that it is attempting to exclude***." *Id.* at 1299 (emphasis added). Samsung Display's discussion of *Interdigital* focuses solely on

whether the patented technology was "found" in the downstream products, Blue Br. at 40-41, without regard to the Court's finding that complainant had "licensed" the products. As discussed above, neither SEC nor SEA are licensees that practice the Asserted Patents and the products that Samsung Display seeks to exclude are replacement displays, not downstream smartphones. Appx209; Appx7592-7593 (Notice of Investigation).

Samsung Display misunderstands the Commission's remedial authority when it argues that "the Commission routinely issues exclusion orders" applying to both "the smallest class of patent-practicing" articles as well as "downstream products containing them." Blue Br. at 38. The scope of the remedy in a section 337 investigation is dependent upon the scope of each investigation, which is determined by the notice of investigation.[18] In *Certain Integrated Circuits and Products Containing the Same*, the scope of the investigation was defined to include both the computer processors and mobile devices containing the same but the domestic industry was based on a licensee's manufacturing of the patent-protected processors in the United States. Inv. No. 337-TA-1148, Comm'n Op., 2022 WL 20402978, at *7-9 (Dec. 30, 2020); *cf. Certain Erasable Programmable*

[18] The title of the investigation is also included in the notice of investigation, but, contrary to Samsung Display's argument, the title does not dictate the final scope of issued remedial orders. Blue Br. at 38.

*Read-Only Memories, Components Thereof, Prods Containing Such Memories, & Processes for Making Such Memories*, Inv. No. 337-TA-276, Comm'n. Op., 1989 WL 1716252, *88 (May 1989), *aff'd sub nom. Hyundai Elec. Indus. Co. v. USITC*, 899 F.2d 1204, 1209 (Fed. Cir. 1990) (considering certain factors in determining whether an exclusion order should cover a respondent's downstream products); *but see Kyocera*, 545 F.3d at 1357-58 (reversing the Commission's exclusion of third-party downstream products). In *Certain Microfluidic Systems and Components Thereof and Products Containing the Same*, the scope of the investigation was defined to include both microfluidic systems and components used for gene sequencing or related analyses and there was no dispute that the complainant had satisfied the domestic industry requirement with respect to the domestic industry products based on complainant's own activities in domestic research and development, engineering, and manufacturing.[19] Inv. No. 337-TA-1100, Comm'n

[19] In *Certain Mobile Telephones, Tablet Computers with Cellular Connectively, and Smart Watches with Cellular Connectively, Components Thereof, and Products Containing Same*, Inv. No. 337-TA-1299, the Commission took no position on the ALJ's Order granting complainant's motion for summary determination that it had met the economic prong of the domestic industry requirement after the case settled. Comm'n Notice, 2023 WL 2571948, at *1-2 (Mar. 15, 2023). The ALJ found a domestic industry existed based on the complainant's own activities and those of its licensee with respect to the undisputed domestic industry products. *Certain Mobile Telephones*, Inv. No. 337-TA-1299, Order No. 22, 2022 WL 17688524, at *1, *3 (Nov. 15, 2022).

Op., 2020 WL 1504738, at *2-4 (Mar. 24, 2020), *aff'd Bio-Rad Labs., Inc. v. ITC*, 996 F.3d 1302 (Fed. Cir. 2021). By contrast, here, the notice of investigation defines the scope of the investigation as replacement AMOLED displays and modules for mobile devices, as opposed to the downstream mobile devices themselves, and Samsung Display seeks to impermissibly rely on third-party SEA's investments for downstream products that have no connection to the patent-practicing displays or the Asserted Patents to satisfy the domestic industry requirement.

Indeed, it is Samsung Display's misunderstanding of section 337(a)(2)-(3) that is irreconcilable with section 337(a)(1). Samsung Display's proposed bright-line rule that the "articles protected by the patent" encompasses *all* articles that meet every claim limitation, *e.g.*, Blue Br. at 38, leads to the absurd result that even accused products that are found to infringe would be "protected" or "covered." If a complainant can rely on the accused products to satisfy the domestic industry requirement, such a reading would make the "articles" requirement illusory because every investigation is founded upon a respondent's importation of "articles." *See Certain Computs. and Comput. Peripheral Devices, and Components Thereof and Prods. Containing Same*, Inv. No. 337-TA-841, Comm'n Op., 2014 WL 5380098, at *21 (Jan. 9, 2014).

### D. Samsung Display's Interpretation of "with Respect to the Articles Protected by the Patent" Is Overbroad

The Commission's interpretation that, under the present record, only investments or employments in the United States with respect to Samsung Display's patented displays constitute the domestic industry is reasonable and supported by this Court's precedent. Samsung Display's proposed interpretation that any article is "protected by the patent" simply if it meets all limitations of a claim would be too expansive for the domestic industry requirement. *See, e.g.*, Blue Br. at 50 (river analogy to describe a supply chain). Indeed, it would credit as establishing a domestic industry those investments in downstream products that have no connection to the actual patented article or technology. Consider, for example, a foreign manufacturer of patent-protected, custom wiper blades that sells its blades to a foreign car manufacturer for use in a car. Under Samsung Display's approach, the foreign blades manufacturer would be allowed to rely on the domestic investments of the foreign car manufacturer in its car even if the foreign car manufacturer's domestic activities have nothing to do with the wiper blade (either alone or in the car). Or, in the context of an inventor with a patent on lightbulb technology, the Empire State Building contains an abundance of foreign-made electrical fixtures using lightbulb technology and, under Samsung Display's theory, the inventor could claim the costs of maintaining the Empire State Building as a domestic industry under section 337(a)(3)(A). The Commission has expressly

rejected such an expansive view. *See*, *e.g.*, *Video Game*, 2013 WL 12410036, at *40-41 (explaining that "the relevant domestic industry under the economic prong may, under appropriate circumstance depending on the realities of the marketplace, be defined in terms of a downstream product" but declining to extend the scope of the articles protected by the asserted patents to everything in the MagiQuest attraction where most elements had no effect on the interactive capabilities of the claimed wand). Similarly, in *Roku*, this Court rejected appellant's argument that the industry should be defined with respect to the downstream smart TVs rather than the patented QuickSet software that practices the claims when installed on those TVs. 90 F.4th at 1373-74.

Samsung Display's overbroad approach to investments "with respect to the articles protected by the patent" would extend the investments included in a domestic industry far beyond the statute's intended scope, and it does not provide any practical limits. As discussed above, the realities of the marketplace framework sets forth factors, as detailed in *Magnetic Tape*, to consider in determining whether investments other than in the patented technology or patented article may be considered investments "with respect to articles protected by the patent." Here, the Commission's determination that those factors do not warrant including investments beyond the patent-practicing AMOLED DI Products is reasonable and supported by the record as a whole. *See supra*, Part III(C).

## CONCLUSION

For the foregoing reasons, the Commission respectfully requests that its final determination be affirmed.

Respectfully Submitted,

*/s/ Cathy Chen*

Margaret D. Macdonald
General Counsel
Amanda P. Fisherow
Assistant General Counsel
Lynde F. Herzbach
Acting Assistant General Counsel
Cathy Chen
Attorney-Advisor
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone: (202) 205-2392
cathy.chen@usitc.gov

*Counsel for Appellee*
*International Trade Commission*

Date: November 21, 2025

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE, AND TYPE STYLE REQUIREMENTS

Pursuant to Federal Rule of Appellate Procedure 32(g)(1) and Federal Circuit Rule 32(b)(3), I hereby certify that the attached brief complies with the type-volume limitation and typeface requirements of Federal Rule of Appellate Procedure 32(a)(7) and Federal Circuit Rules 32(b)(1) and 32(b)(2). The brief has been prepared in a proportionally-spaced typeface using Microsoft Office 365, in Times New Roman 14-point font. The brief contains a total of **13,041** words obtained from the word-count function of the word-processing system.

*/s/ Cathy Chen*
Cathy Chen
Attorney Advisor
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone: (202) 205-2392
Cathy.Chen@usitc.gov

*Counsel for Appellee*
*International Trade Commission*

Date: November 21, 2025

## CERTIFICATE OF COMPLIANCE WITH CONFIDENTIALITY REQUIREMENTS

Pursuant to Fed. Cir. R. 25.1(e)(2), I hereby certify that the attached brief, which contains material marked as confidential under Fed. Cir. R. 25.1(d)(1), complies with the limitations and requirements related to confidential information set forth in Fed. Cir. R. 25.1(d) and 28(d). This brief contains **11** unique words marked as confidential, not including words or images marked as confidential in Appellant's principal brief. All such confidential material has been properly identified with required bracketing, page headers, and labeled redactions (in the nonconfidential version of the brief).

*/s/ Cathy Chen*

Cathy Chen
Attorney Advisor
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone: (202) 205-2392
Cathy.Chen@usitc.gov

*Counsel for Appellee*
*International Trade Commission*

Date: November 21, 2025