**No. 25-1791**

# United States Court of Appeals for the Federal Circuit

SAMSUNG DISPLAY CO., LTD.
*Appellant*

v.

INTERNATIONAL TRADE COMMISSION
*Appellee*

Appeal from the United States International Trade Commission, Investigation No. 337-TA-1351

**REPLY BRIEF OF APPELLANT SAMSUNG DISPLAY CO., LTD.**


Robert A. Long
Sturgis M. Sobin
Richard L. Rainey
Jeffrey H. Lerner
Jared Frisch
Daniel W. Cho
Tarek J. Austin
COVINGTON & BURLING LLP
850 Tenth Street NW
Washington, DC 20001-4956
(202) 662-6000

Brian G. Bieluch
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
(424) 332-4800

*Counsel for Appellant Samsung Display Co., Ltd.*


January 12, 2026

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 25-1791

**Short Case Caption** Samsung Display Co., Ltd. v. ITC

**Filing Party/Entity** Samsung Display Co., Ltd.

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 01/12/2026

Signature: /s/ Tarek J. Austin

Name: Tarek J. Austin

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br>☐ None/Not Applicable |
| Samsung Display Co., Ltd. | | Samsung SDI Co., Ltd. |
| | | Samsung Electronics Co., Ltd. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☑ Additional pages attached

| | | |
|---|---|---|
| See additional page attached | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## Attachment

**4. Legal Representatives**. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in the court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

Covington & Burling LLP: Jessica C. Hill, Paul J. Wilson, Derek J. Andros, Natalie M. Ritchie (no longer with Covington), Kee Young Lee, Scott C. Burger, Yong Joon Kwon, Allyson C. Corigliano, Amy Bond, Michael K. Plimack, Scott A. Schrader, Philip A. Irwin, Jesse Chang, Shara L. Aranoff, Matthew A. Kudzin, Lucas Moench, William Meyer, Jia Hui Jiang (no longer with Covington).

Quinn Emanuel Urquhart & Sullivan, LLP: S. Alex Lasher, K. Kevin Chu, Mike Doman, Marc L. Kaplan, D. James Pak, Landon Smith, Jacqueline Wu.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

I. THE COMMISSION EFFECTIVELY CONCEDES THAT THE STANDARD APPLIED BELOW CONTRAVENES THE PLAIN MEANING OF THE STATUTORY TEXT. ........ 3

II. SAMSUNG DISPLAY'S ARGUMENTS ARE PROPERLY BEFORE THIS COURT. ........ 4

A. Samsung Display's Petition to the Commission Argued that the Galaxy DI Products Are "Articles Protected by the Patent" Under the Plain Terms of the Statute and the Commission Did Not Find that Argument Forfeited. ........ 4

B. Before the ALJ, Samsung Display Preserved the Issue of Whether SEA's Investments in the Galaxy DI Products Are "with Respect to the Articles Protected by the Patent." ........ 6

C. Samsung Display Argued Before the ALJ that the Galaxy DI Products Are "Articles Protected by the Patent." ........ 8

D. It Would Have Been Futile for Samsung Display to Raise Its Plain-Meaning Arguments Before the ALJ ........ 11

E. Samsung Display's Alternative Appellate Argument Arose from an Intervening Change in the Law. ........ 12

F. The Commission's Forfeiture Precedents Are Inapposite. ........ 13

G. Alternatively, This Court Should Exercise Discretion to Address Any Unpreserved Issue. ........ 15

III. THE GALAXY DI PRODUCTS ARE "ARTICLES PROTECTED BY THE PATENT." ........ 18

A. The Doctrine of Patent Exhaustion Is Inapposite ........ 18

B. SEA Is Licensed to the Asserted Patents. ........ 22

C. The Commission's Other Arguments Are Unavailing....................... 26

IV. ALTERNATIVELY, SEA'S INVESTMENTS ARE "WITH RESPECT TO" THE ARTICLES PROTECTED BY THE PATENT........ 27

V. THIS COURT SHOULD RESOLVE ALL ISSUES RAISED NOW......... 29

CONCLUSION.......................................................................................... 31

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Align Tech., Inc. v. Int'l Trade Comm'n*,
771 F.3d 1317 (Fed. Cir. 2014) ....................4, 6

*Automated Merchandising Sys., Inc. v. Lee*,
782 F.3d 1367 (Fed. Cir. 2015) ....................16

*Bannister v. Dept. of Veterans Affairs*,
26 F.4th 1340 (Fed. Cir. 2022) ....................13

*BioDelivery Scis. Int'l, Inc. v. Aquestive Therapeutics, Inc.*,
898 F.3d 1205 (Fed. Cir. 2018) ....................13

*Broadcom Corp. v. Int'l Trade Comm'n*,
28 F.4th 240 (Fed. Cir. 2022) ....................14, 29

*Caterpillar Prodotti Stradali v. Int'l Trade Comm'n*,
847 F. App'x 893 (Fed. Cir. 2021) ....................22

*Cemex, S.A. v. United States*,
133 F.3d 897 (Fed. Cir. 1998) ....................15

*Certain Video Game Sys. and Wireless Controllers*,
Inv. No. 337-TA-770, 2013 WL 12410036 (Oct. 28, 2013) ....................27

*Chassen v. Fidelity Nat'l Fin., Inc.*,
836 F.3d 291 (3d Cir. 2016) ....................12, 13

*ClearCorrect Operating, LLC v. Int'l Trade Comm'n*,
810 F.3d 1283 (Fed. Cir. 2015) ....................27

*Corning v. Fast Felt Corp.*,
873 F.3d 896 (Fed. Cir. 2017) ....................30

*De Forest Radio Tel. Co. v. United States*,
273 U.S. 236 (1927)....................23

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
955 F.3d 1317 (Fed. Cir. 2020) ....................17

*Finnigan Corp. v. Int'l Trade Comm'n*,
180 F.3d 1354 (Fed. Cir. 1999) ....................................................................16

*Guangdong Alison Hi-Tech Co. v. Int't Trade Comm'n*,
936 F.3d 1353 (Fed. Cir. 2019) ....................................................................16

*Hall v. Bed Bath & Beyond, Inc.*,
705 F.3d 1357 (Fed. Cir. 2013) ....................................................................16

*HC Robotics v. Int'l Trade Comm'n*,
2025 WL 2424283 (Fed. Cir. Aug. 22, 2025) ..................................................22

*HTC Corp. v. Cellular Commc'ns Equip. LLC*,
701 F. App'x 978 (Fed. Cir. 2017) ................................................................16

*Icon Health and Fitness, Inc. v. Strava, Inc.*,
849 F.3d 1034 (Fed. Cir. 2017) ..........................................................15, 16, 17

*Impression Prods., Inc. v. Lexmark Int'l, Inc.*,
581 U.S. 360 (2017)........................................................................................20

*Interactive Gift Exp., Inc. v. Compuserve Inc.*,
256 F.3d 1323 (Fed. Cir. 2001) ....................................................................15

*Kyocera Wireless Corp. v. Int'l Trade Comm'n*,
545 F.3d 1340 (Fed. Cir. 2008) ...............................................................14, 16

*Lashify, Inc. v. Int'l Trade Comm'n*,
130 F.4th 948 (Fed. Cir. 2025) .............................................................*passim*

*Loper Bright Enter. v. Raimondo*,
603 U.S. 369 (2024)........................................................................................31

*Marine Polymer Techs., Inc. v. HemCom, Inc.*,
659 F.3d 1084 (Fed. Cir. 2011), *rev'd on other grounds*, 672 F.3d
1350 (Fed. Cir. 2012).......................................................................................30

*Medraph, Inc. v. Medtronic, Inc.*,
843 F.3d 942 (Fed. Cir. 2016) ......................................................................31

*Medtronic, Inc. v. Teleflex Innovations SARL*,
68 F.4th 1298 (Fed. Cir. 2023) .................................................................7, 15

*In re Micron Tech., Inc.*,
875 F.3d 1091 (Fed. Cir. 2017) ....................................................................12

*Microsoft Corp. v. Int'l Trade Comm'n*,
731 F.3d 1354 (Fed. Cir. 2013) ....................................................................29

*Mueller v. Mueller*,
95 F. 155 (3d Cir. 1899) ..............................................................................25

*N. Telecom Ltd. v. Samsung Elecs. Co.*,
215 F.3d 1281 (Fed. Cir. 2000) ......................................................................8

*Olaplex, Inc. v. L'Oreal USA, Inc.*,
855 F. App'x 701 (Fed. Cir. 2021) ...............................................................17

*Pfizer, Inc. v. Lee*,
811 F.3d 466 (Fed. Cir. 2016) ........................................................................8

*Philip Morris Prods. S.A. v. Int'l Trade Comm'n*,
63 F.4th 1328 (Fed. Cir. 2023) ...............................................................13, 14

*Quanta Comput., Inc. v. LG Elecs., Inc.*,
553 U.S. 617 (2008).......................................................................................20

*SmithKline Beecham Corp. v. Apotex Corp.*,
439 F.3d 1312 (Fed. Cir. 2006) ......................................................................5

*Taylor v. McDonough*,
71 F.4th 909 (Fed. Cir. 2023) .......................................................................12

*Tessera v. Int'l Trade Comm'n*,
646 F.3d 1357 (Fed. Cir. 2011) ....................................................................20

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
574 U.S. 318 (2015).......................................................................................16

*United States v. Dunkel*,
927 F.2d 955 (7th Cir. 1991) ...................................................................4, 5, 6

*Veterans4You LLC v. United States*,
985 F.3d 850 (Fed. Cir. 2021) .................................................................7, 15, 17

*Wang Lab'ys, Inc. v. Mitsubishi Elecs. Am., Inc.*,
103 F.3d 1571 (Fed. Cir. 1997) ....................................................................24

*Warner-Lambert Co. v. Teva Pharms. USA, Inc.*,
418 F.3d 1326 (Fed. Cir. 2005) ......................................................................8

*Winbond Elecs. Corp. v. Int'l Trade Comm'n*,
262 F.3d 1363 (Fed. Cir. 2001) ....................................................................24

*Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*,
683 F.3d 1356 (Fed. Cir. 2012) ......................................................................5

**Statutes**

19 U.S.C. § 1337(a) ...........................................................................................27

19 U.S.C. § 1337(a)(3).....................................................................................9, 10

## INTRODUCTION

The Commission agrees that the plain meaning of the phrase "articles protected by the patent" in Section 337(a)(3) is "material things covered or shielded by the patent." RB 46 n.14. That undisputed construction resolves this appeal.

The Commission's realities-of-the-marketplace framework departs from the plain meaning of the statutory language. By its terms, the phrase "articles protected by the patent" requires determining whether a product is covered or shielded by the patent. The realities-of-the-marketplace test replaces that straightforward determination with a multi-factor evaluation of the degree of connection between the product, the "patented technology," and "domestic industry activities." As in another recent case, "the Commission's brief to this court does not meaningfully attempt to square its position with the statutory text[.]" *Lashify, Inc. v. Int'l Trade Comm'n*, 130 F.4th 948, 958 (Fed. Cir. 2025).

Rather than confront this Court's admonition in *Lashify* not to read into Section 337(a)(3) limitations not found in the statutory text, the Commission tries to avoid the issue with assertions of forfeiture and proffers of alternative grounds for affirmance.

The Commission's forfeiture arguments fail for several independent reasons. *First*, Samsung Display squarely raised its lead plain-meaning argument in its petition to the Commission and the Commission did not find that argument forfeited.

*Second*, Samsung Display argued before the ALJ and the Commission that, under the Commission's interpretation of Section 337(a)(3) (the realities-of-the-marketplace test), SEA's investments in the Galaxy DI Products are "with respect to the articles protected by the patent." Samsung Display's plain-meaning arguments on appeal are permissible additional arguments in support of a properly preserved issue. *Third*, contrary to the Commission's assertions, Samsung Display argued before the ALJ that the Galaxy DI Products are "articles protected by the patent." *Fourth*, it would have been futile for Samsung Display to present either of its plain-meaning arguments to the ALJ. *Fifth*, Samsung Display's alternative plain-meaning argument arose from an intervening change in the law: this Court's decision in *Lashify*. *Sixth*, and alternatively, this Court would have discretion to address the plain-meaning arguments even if they had not been preserved, and all the recognized grounds for such an exercise of discretion apply here.

The Commission's alternative grounds for finding the Galaxy DI Products not "protected" were raised and briefed by respondents below. They present issues of law as to which the underlying facts are undisputed. This Court can and should reject those arguments now. *First*, the Commission's attempt to transplant the doctrine of patent exhaustion into Section 337's definition of "domestic industry" contravenes the statute's text and purpose as well as settled precedent. *Second*, undisputed facts and the Commission's own findings confirm that SEA is licensed.

## I. THE COMMISSION EFFECTIVELY CONCEDES THAT THE STANDARD APPLIED BELOW CONTRAVENES THE PLAIN MEANING OF THE STATUTORY TEXT.

The Commission agrees with Samsung Display's analysis of the plain meaning of the clause "articles protected by the patent." RB 46 n.14 ("The Commission agrees with Samsung Display that the plain meaning of 'article' is 'a material thing' and the plain meaning of 'protected' is 'covered' or 'shielded.'"). That plain meaning requires a determination of whether a proffered downstream product is covered or shielded by the asserted patent—*i.e.*, whether the product meets all limitations of a claim. RB 21; OB 30-36.

By contrast, the Commission's realities-of-the-marketplace framework eschews "any … rigid formula" for "determin[ing]" what are "articles protected" (RB 21) and instead relies on a multi-factor evaluation of the degree of connection between "downstream product," "patented technology," and "domestic industry activities" (RB 14-17; OB 15). Thus, the Commission has effectively conceded that the standard it applied below contravenes the plain meaning of the statutory language.[1]

---

[1] This brief refers to the "realities-of-the-marketplace" and "*Magnetic Tape*" tests interchangeably. RB 37.

## II. SAMSUNG DISPLAY'S ARGUMENTS ARE PROPERLY BEFORE THIS COURT.

The Commission's contentions that Samsung Display forfeited its appellate arguments are inconsistent with the record and conflict with settled law. Section II.A-F. Even if that were not so, however, the Court can and should exercise its discretion to address the issues raised. Section II.G.

### A. Samsung Display's Petition to the Commission Argued that the Galaxy DI Products Are "Articles Protected by the Patent" Under the Plain Terms of the Statute and the Commission Did Not Find that Argument Forfeited.

There is no dispute that Samsung Display's petition to the Commission argued that the Galaxy DI Products are "articles protected by the patent" under the plain meaning of the statutory terms. RB 26-27 (acknowledging argument was raised). It is also undisputed that the Commission *did not* find this argument forfeited (although it did find other arguments forfeited). That alone suffices to reject the Commission's forfeiture arguments on appeal. *See Align Tech., Inc. v. Int'l Trade Comm'n*, 771 F.3d 1317, 1324 (Fed. Cir. 2014) ("The reasoning offered by the Commission on appeal appears to be improper post hoc rationalization. … The Commission had two chances to invoke waiver … but did not do so."); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("[C]laims of waiver may themselves be waived[.]").

Although the Commission characterizes Samsung Display's plain-meaning argument in its petition as "skeletal" (RB 26), in fact Samsung Display accorded the argument a separate section, titled "Under the plain text of Section 337, the Galaxy DI Products are properly considered to be 'articles protected by the patent.'" Appx70111-70112. Samsung Display spent a full page articulating the argument, discussing this Court's precedent (including the same core decisions it relies on before this Court), and identifying support from the statutory and legislative history. *See id.*; *Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 683 F.3d 1356, 1360 n.3 (Fed. Cir. 2012) ("[Appellant] presented the essence of its present arguments to the district court sufficiently to preserve those arguments for appeal. … Although in much abbreviated form, that is essentially the same argument[.]"); *compare with SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (RB 29 n.7) (finding waiver where footnote contained "the only statement that even approaches a substantive argument on novelty in the entire Argument"); *Dunkel*, 927 F.2d at 956 (RB 29 n.7) (argument "bur[ied] … in a single unreasoned paragraph" waived). Indeed, Respondents acknowledged and addressed the argument. Appx70520-70523.

Had the Commission deemed the parties' briefing on this issue of law insufficiently developed, it could have ordered supplemental briefing. Instead, the Commission ordered supplemental briefing on *other* issues, Appx70784, and

instructed that "[t]he parties are not to brief other issues on review, *which are adequately presented in the parties' existing filings*[,]" Appx70785 (emphasis added). The Commission did not find Samsung Display's plain-meaning argument waived or forfeited, despite finding *other* arguments waived, Appx28 n.23 (comparing Appx70091-70101 with Appx68739-68744 and finding waiver of certain arguments relating to *Magnetic Tape* test), and specified it "considered all of the other arguments by the parties and does not find them persuasive," Appx31. Accordingly, the Commission affirmatively waived its post hoc forfeiture claim. *See Align*, 771 F.3d at 1324; *Dunkel*, 927 F.2d at 956.

### B. Before the ALJ, Samsung Display Preserved the Issue of Whether SEA's Investments in the Galaxy DI Products Are "with Respect to the Articles Protected by the Patent."

The Commission's forfeiture arguments should be rejected for several additional reasons. The Commission conflates the *issue* of whether SEA's investments in the Galaxy DI Products are "with respect to the articles protected by the patent" with the *arguments* Samsung Display has raised in support of its position on that issue: (i) that the Galaxy DI Products are "articles protected by the patent" under the Commission's interpretation of Section 337(a)(3), *i.e.*, the realities-of-the-marketplace test (Samsung Display's argument to the ALJ, Appx46293-46306, Appx68733-68739, and its lead argument to the Commission, Appx70072-70111); (ii) that the Galaxy DI Products are "articles protected by the patent" under the plain

meaning of the statutory terms (Samsung Display's alternative argument to the Commission, Appx700111-70112, and lead appellate argument, OB 29-46); and (iii) alternatively, that even if the display panels used in the Galaxy DI Products are the only "articles protected by the patent," SEA's investments in the Galaxy DI Products are "with respect to" the protected articles under the plain meaning of the statutory terms (Samsung Display's alternative appellate argument, OB 46-62).

It is undisputed that Samsung Display argued before the ALJ and the Commission that SEA's investments in the Galaxy DI Products are "with respect to the articles protected by the patent" under Section 337(a)(3). RB 9; OB 17-18. Samsung Display thereby preserved the issue of whether SEA's investments are "with respect to the articles protected by the patent." Samsung Display's appellate arguments—grounded in the plain meaning of "articles protected by the patent" and "with respect to"—are permissible additional arguments in support of a properly preserved issue.

The doctrine of forfeiture does not bar appellants from raising new arguments in support of preserved issues. *See Medtronic, Inc. v. Teleflex Innovations SARL*, 68 F.4th 1298, 1305 (Fed. Cir. 2023) (explaining that forfeiture applies to "issues not raised" and finding no forfeiture where appellate arguments "address the same, general issue" raised below); *Veterans4You LLC v. United States*, 985 F.3d 850, 858 (Fed. Cir. 2021) (no forfeiture of "a new argument in support of an existing claim");

*Pfizer, Inc. v. Lee*, 811 F.3d 466, 471 (Fed. Cir. 2016) ("Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below."); *Warner-Lambert Co. v. Teva Pharms. USA, Inc.*, 418 F.3d 1326, 1338 n.11 (Fed. Cir. 2005) (no forfeiture of new enablement arguments where appellant "raised [below] the general issue of enablement," as "it is the claim or issue that must be pressed before the trial court, not the underlying arguments in support of that claim or issue").[2]

### C. Samsung Display Argued Before the ALJ that the Galaxy DI Products Are "Articles Protected by the Patent."

The Commission asserts that Samsung Display "did not argue before the ALJ that SEA's downstream Galaxy DI Products are themselves 'articles protected by the patent[s].'" RB 24-25. That is incorrect. Samsung Display consistently argued before the ALJ that the Galaxy DI Products are "articles protected by the patent" under the realities-of-the-marketplace test.

In its pre-hearing brief, Samsung Display defined the "'DI Products' or 'Domestic Industry Products'" as the "*Galaxy DI Products and* AMOLED DI Products." Appx45881 (emphasis added). Samsung Display (i) explained that

---

[2] *Northern Telecom* (RB 33) is inapposite. There, the appellant allegedly sought to overturn a claim construction it had advocated for and obtained below. *N. Telecom Ltd. v. Samsung Elecs. Co.*, 215 F.3d 1281, 1290 (Fed. Cir. 2000). Here, Samsung Display's position that certain investments are with respect to protected articles has not changed. And unlike in *Northern Telecom*, the Commission does not (and has no basis to) invoke estoppel. *Id.*

"[t]he 'articles requirement'—that complainants must show investments relating to the 'articles protected by the patent,' 19 U.S.C. §§ 1337(a)(3)(A),(B)—'sometimes requires the Commission to determine what the appropriate domestic industry articles are'"; (ii) invoked the "'principle that domestic industry (including the definition of the article protected by the patent…)' is determined by 'an examination of the … realities of the marketplace,'" which may "require … extension of 'the relevant industry' to a downstream article of commerce incorporating the patented component"; and (iii) applied the realities-of-the-marketplace test to conclude that "investments related to … *the Galaxy DI Products* … are properly included within the domestic industry." Appx46293-46294 (emphasis added).

In its post-hearing brief, Samsung Display reiterated this argument and emphasized that, under the Commission's precedent, the realities-of-the-marketplace test determines whether the Galaxy DI Products themselves are "articles protected by the patent." Appx68733-68734 ("[U]nder Commission 'realities of the marketplace' precedent, the DI includes investments in downstream Galaxy smartphones …. 'Domestic industry (*including the definition of the article protected by the patent…*)' is determined by an examination of the … realities of the marketplace … [f]actors…. Under these factors, the following Galaxy smartphones … are proper DI products." (italics in original, underlining added)); *see also* Appx70076 (Petition) ("[D]ownstream products are properly considered articles

protected where … they provide the exclusive and necessary avenue for exploiting the patented article….”).

All parties recognized Samsung Display's position to be that the Galaxy DI Products, in addition to the AMOLED DI Products, are "articles protected." Respondents countered that *neither* of the sets of products are "protected" insofar as Samsung Display's patent rights in them are allegedly exhausted. Appx68536 ("Because SDC's patent rights terminated before Galaxy phones enter the U.S., those phones are not 'articles protected by the [asserted] patent[s] under 19 U.S.C. § 1337(a)(3).'"); Appx46729 n.25 ("The exhaustion argument applies to both the Galaxy DI Products and the AMOLED DI Products."); Appx46728; Appx39284 (Commission Staff) ("Respondents argue that the DI Products—both the AMOLED DI Product[s] and the Galaxy DI Products—are not and never were 'protected' by the Asserted Patents.").

Samsung Display again asserted that the Galaxy DI Products are "articles protected" in reply to Respondents' exhaustion argument. Appx46303-46304 (explaining that "'articles protected by the patent' is part of the statute's definition of what may be relied upon to determine the existence of a DI" and "require[s] only that DI products be 'covered by the patent….'"); Appx68739 ("[E]xhaustion has no bearing on what qualifies as 'articles protected by [a] patent' … Products are protected by a patent so long as they 'practice'—are 'covered by'—the patent.").

The record also refutes the Commission's assertion that "all parties recognized that the AMOLED DI Products are the only patent-practicing articles." RB 24. In its technical prong analysis, Samsung Display argued that the Galaxy DI Products practice the patents and thus are patent-practicing articles. OB 17 (collecting citations); Appx46293 n.27 (Pre-Hearing Brief) ("The DI Products [AMOLED DI Products and Galaxy DI Products] are discussed jointly because each DI Product practices at least one claim of each Asserted Patent."); Appx68733 (Post-Hearing Brief) (same); Appx68960-68961; Appx65848-65849; Appx66067; Appx69040 n.20 (Respondents) ("SDC … acknowledges 'protected' refers to whether an article practices the asserted patent…."). Significantly, the ALJ's initial determination itself accepted Samsung Display's argument and found that the Galaxy DI Products practice the patents, OB 19-20, and its findings became Commission determinations, *id.* at 23-24.

### D. It Would Have Been Futile for Samsung Display to Raise Its Plain-Meaning Arguments Before the ALJ.

The ALJ was bound to follow the Commission's interpretation of Section 337(a)(3) reflected in the realities-of-the-marketplace test. Accepting Samsung Display's plain-meaning arguments would have required the ALJ to disregard Commission precedent by cabining the realities-of-the-marketplace test to non-patent-practicing "accessories or other ancillary products" (OB 29-46, 50-51), replacing the test (OB 51-53), or modifying it (OB 54-59)—none of which the ALJ

could do. This Court recognizes futility as a reason not to find forfeiture. *See Taylor v. McDonough*, 71 F.4th 909, 930 (Fed. Cir. 2023) ("We do not hold that [appellant] forfeited his current argument …, which would require a sharp change in the law that bound the Veterans Court" and thus would have been "futile."); *In re Micron Tech., Inc.*, 875 F.3d 1091, 1097 (Fed. Cir. 2017) ("When a defense or objection is futile in the sense that the law bars the district court from adopting it …, to require the assertion of the defense or objection…, on pain of waiver, would generally be to require the waste of resources[.]"); *accord Chassen v. Fidelity Nat'l Fin., Inc.*, 836 F.3d 291, 293 (3d Cir. 2016) ("Every circuit to have answered this question has held that a litigant need not engage in futile gestures merely to avoid a claim of waiver.").

### E. Samsung Display's Alternative Appellate Argument Arose from an Intervening Change in the Law.

Samsung Display's alternative appellate argument (OB 46-59) arose from a significant change in the law: this Court's decision in *Lashify*, issued on March 5, 2025, after completion of briefing below (in December 2024) and shortly before the Commission denied Samsung Display's petition (on March 19, 2025). In *Lashify*, this Court overturned a longstanding Commission interpretation of Section 337(a)(3) and clarified that the Commission cannot read into the domestic industry requirement limitations not found in the statutory text. *See* 130 F.4th at 957-64. *Lashify* supports Samsung Display's challenge to otherwise settled precedent. *See* RB 33 (acknowledging "long … line of decisions applying the realities-of-the-

marketplace framework'" (quoting Appx70072)); *Bannister v. Dept. of Veterans Affairs*, 26 F.4th 1340, 1343 n.1 (Fed. Cir. 2022) (recognizing "sufficiently sharp change of law" as "ground for permitting a party to advance a position that it did not advance earlier"); *BioDelivery Scis. Int'l, Inc. v. Aquestive Therapeutics, Inc.*, 898 F.3d 1205, 1209 (Fed. Cir. 2018) ("[A] party does not waive an argument that arises from a significant change in law[.]").

That the Commission presently opposes Samsung Display's argument (RB 34-45) while studiously ignoring *Lashify*—it never even acknowledges the decision—confirms that presenting the argument any earlier would have been a "futile gesture[]." *Chassen*, 836 F.3d at 293.

### F. The Commission's Forfeiture Precedents Are Inapposite.

The Commission's lead forfeiture precedents are readily distinguishable. In *Philip Morris Prods. S.A. v. Int'l Trade Comm'n*, 63 F.4th 1328 (Fed. Cir. 2023) (RB 25-34), the complainant failed to preserve an *issue*. The complainant (i) never "even mentioned[] the Commission's statutory duty to consult with HHS or the FDA" even though "the ALJ directly asked the parties for their views" on that issue; (ii) "made no mention" of the issue in its petition; and (iii) for the first time in reply briefing obliquely noted "the Commission *may find it enlightening* to discuss these matters with various party and third-party experts … and *perhaps even representatives of FDA*." *Id.* at 1336-37. The Commission found the issue forfeited,

explaining that (i) complainant's "vague suggestion" was "nowhere near … an assertion of legal error" and (ii) complainant's "failure to raise the issue" left it "no opportunity to address [complainant's] concerns." *Id.* Here, Samsung Display raised whether SEA's investments satisfy Section 337(a)(3) before the ALJ and the Commission; Samsung Display squarely raised its lead appellate argument in its petition; and the Commission did not find forfeiture. *Supra* Sections II.A-C; *compare also with Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1352 (Fed. Cir. 2008) (RB 25) (noting Commission found forfeiture).

In *Broadcom Corp. v. Int'l Trade Comm'n*, 28 F.4th 240 (Fed. Cir. 2022) (RB 27, 29), after the ALJ found the complainant's proffered "domestic industry article" did not practice the patent, the complainant proffered to the Commission a new domestic industry "system." *Id.* at 250. The Commission found that new theory waived, and this Court rejected the appellant's "assert[ions] [of] error in the Commission's findings of fact." *Id.* at 249-50. Here, Samsung Display proffered the Galaxy DI Products as "domestic industry articles" to the ALJ and the Commission; Samsung Display alleges *legal* error; and the Commission did not find forfeiture. *Supra* Sections II.A-C.

The Commission's other precedents are also distinguishable because, among other reasons, they involved narrow, patent-specific issues. *Infra* at 16-17.

### G. Alternatively, This Court Should Exercise Discretion to Address Any Unpreserved Issue.

"[F]orfeiture is a matter of discretion." *Medtronic*, 68 F.4th at 1305. This Court "has enumerated a variety of reasons" for addressing unpreserved issues. *Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1344-45 (Fed. Cir. 2001); *Icon Health and Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1040 (Fed. Cir. 2017). One or two of the six recognized factors often suffice for this Court to address unpreserved issues, as cases cited below demonstrate. Here, *all* factors apply.

*First*, the issues involve pure questions of law: (i) whether a product comprising a patented component is an "article[] protected by the patent" under Section 337(a)(3), and, alternatively, (ii) whether or under what general circumstances investment in a product comprising a patented component is "with respect to" the component under Section 337(a)(3). *See Veterans4You*, 985 F.3d at 858 (exercising discretion to address constitutional issue "to whatever extent" issue was unpreserved); *Cemex, S.A. v. United States*, 133 F.3d 897, 902 (Fed. Cir. 1998) ("The United States … entreat us to ignore [appellant's] argument because [appellant] failed to raised it before the [Court of International Trade]. … [B]ecause an issue of statutory interpretation is involved, we address [the] argument.").

*Second*, the issues present significant questions of general impact and great public concern because they affect the scope of domestic industry investments in all

Section 337 proceedings involving products containing patented components. *See Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 330-31 (2015) (highlighting breadth of impact of "statutory interpretation" issues by contradistinction to "claim construction" issues). The Commission itself has stressed to this Court in this appeal that "issues regarding the scope and interpretation of section 337 are of utmost importance to the Commission and require special consideration by the General Counsel as well as each of the Commissioners and their staff." Dkt. 26 at 2; *see Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1371 (Fed. Cir. 2013) ("[W]aiver is generally inapplicable to significant questions of general impact."); *Icon*, 849 F.3d at 1040 (addressing unpreserved issue that "could affect … a large number of expert declarations"); *Automated Merchandising Sys., Inc. v. Lee*, 782 F.3d 1367, 1379 (Fed. Cir. 2015) (addressing unpreserved issue "affecting a range of PTO proceedings").

Most of the Commission's forfeiture precedents are distinguishable because they involved failures to preserve narrow, patent-specific issues. *See Guangdong Alison Hi-Tech Co. v. Int't Trade Comm'n*, 936 F.3d 1353, 1362 (Fed. Cir. 2019) (patent-specific indefiniteness issue); *Kyocera*, 545 F.3d at 1352 (patent-specific obviousness issue); *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1362-63 (Fed. Cir. 1999) (patent-specific claim-construction issue); *compare with HTC Corp. v. Cellular Commc'ns Equip. LLC*, 701 F. App'x 978, 985 (Fed. Cir. 2017)

(electing not to address unpreserved "patent-specific claim-construction issue, not a matter of statutory interpretation").

*Third*, the plain meaning of the statute is not in dispute, and the proper resolution is clear for the reasons explained in Samsung Display's briefs. *See* Sections I, III-IV; OB 26-59; *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1322-23 (Fed. Cir. 2020) ("exercis[ing] … discretion" to address issue where "the resolution … is straightforward"); *Icon*, 849 F.3d at 1040 (same).

*Fourth*, Samsung Display raised its lead appellate argument before the Commission and lacked a viable opportunity to raise its appellate arguments before the ALJ. *Supra* Sections II.A, D-E.

*Fifth*, the record is complete, and the issues are fully briefed on appeal, so there is no prejudice from resolving them now and no purpose served by remand. *Infra* Section V. The Commission does not contend additional factfinding is necessary. Nor does it claim it lacked an adequate opportunity to present its case. *See Veterans4You*, 985 F.3d at 858 ("exercis[ing] … discretion" to address issue "fully briefed by the parties before our Court"); *Olaplex, Inc. v. L'Oreal USA, Inc.*, 855 F. App'x 701, 714 (Fed. Cir. 2021) ("exercis[ing] … discretion" to address issue "requir[ing] no additional factfinding").

*Sixth*, substantial justice is at stake. Application of the doctrine of forfeiture here would yield an outcome both legally erroneous and fundamentally unfair.

## III. THE GALAXY DI PRODUCTS ARE "ARTICLES PROTECTED BY THE PATENT."

The Commission's arguments for why the Galaxy DI Products should not be considered "articles protected" are unavailing.

### A. The Doctrine of Patent Exhaustion Is Inapposite.

Patent exhaustion has no bearing on the identification of "articles protected by the patent" under Section 337(a)(3). The Commission's unprecedented attempt to transmute a personal defense to claims of patent infringement into a limitation on the scope of domestic industry under Section 337, a trade statute (RB 46-51), departs from the statute's plain terms and purpose as well as this Court's precedent. It also contravenes dozens of Commission decisions finding domestic industries based on investments in post-sale products.

At the outset, the Commission's attempt to transplant the doctrine of patent exhaustion into Section 337(a)(3)'s "domestic industry" definition fails because Section 337 is a trade statute that provides trade-related remedies based on violations of IP rights. The phrase "articles protected by the patent" is part of the statute's definition of what investments can establish the existence of a domestic industry that Section 337 protects. That clause has no analog in patent law, which contains no concept of protecting domestic industries. To be sure, the doctrine of patent exhaustion is available in Section 337 proceedings *as a defense to patent*

*infringement*, but it does not bear on the identification of what is a protected domestic industry.

Beginning with the statutory text, "articles protected by the patent" means "material things covered or shielded by the patent." RB 46 n.14. Products are "covered by the patent" if they meet all limitations of a claim and thereby fall within the scope of patent coverage. OB 39-40. Products that are, or contain, an embodiment of the patented invention sold by the patentee or with its authorization—and as such do not infringe—are "shielded by the patent" because the patentee can exclude unauthorized, infringing products that compete with them and thereby undermine the patentee's exclusive right to exploit its invention. OB 36. Exhaustion of the patentee's patent rights in the authorized units prevents the patentee from controlling downstream sales or other use of those authorized units, but it has no impact on the patentee's ability to exclude unauthorized infringing units and any products containing them. Therefore, the authorized units and products containing them remain shielded—protected—by the patent post-exhaustion.

Unsurprisingly, the Commission identifies no precedent applying the doctrine of patent exhaustion to identification of domestic industry products. Instead, the Commission merely cites Supreme Court cases that provide general articulations of the doctrine as a defense to infringement claims. RB 47-50. Those decisions confirm that patent exhaustion is a personal defense to claims of infringement,

rooted in common law, addressing only whether a patentee may assert its patent against purchasers of its own or licensees' products. *See Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 581 U.S. 360, 371-72 (2017) (holding that patent law cannot support restrictions on postsale use of a patented article, not that such an article is "no longer patent-protected" vis-à-vis infringing articles (RB 48)); *Quanta Comput., Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 638 (2008) (exhaustion "prevent[s] the patent holder from invoking patent law to control postsale use of the article"); *see also Tessera v. Int'l Trade Comm'n*, 646 F.3d 1357, 1370 (Fed. Cir. 2011) (RB 55) (doctrine "prohibit[s] postsale restrictions on the use of a patented article").

Patent exhaustion does not alter the reality that a product that meets all limitations of a claim is "covered by the patent." Nor does it change the reality that a domestic industry product that meets all limitations is "shielded by the patent" because the patentee can exclude competing, infringing products. Irrespective of exhaustion, a patent "protects" a domestic industry article by enabling a Section 337 complainant to exclude infringing imported products that diminish the value of the complainant's exclusive right to use the patented invention. As Samsung Display explained—and the Commission does not dispute—if the value an innovator can exact for its patented components (and by extension the value of its IP) diminishes due to downstream infringement, the innovator may stop producing the components or developing new technology, thereby harming the downstream industry. OB 44.

Applying the patent exhaustion doctrine to Section 337(a)(3) would narrow the scope of domestic industry, require unprecedented discovery into the precise time at which title to a product or component passes from one entity to another, and make the existence of protected industry hinge on arbitrary transactional formalities or nuances of corporate form. For example, a vertically integrated company that manufactures a domestic industry product internally would enjoy the protection of Section 337, whereas a company that relies on subsidiaries or licensees would not. The Commission's theory would undermine both (i) Section 337's general purpose of protecting domestic industry from unfair trade practices and the public interest in protecting IP rights, and (ii) Congress's specific broadening purpose behind the 1988 amendments, which aimed to strengthen the effectiveness of section 337 and curb the Commission's restrictive interpretations of the domestic industry requirement.[3]

The Commission's theory is also irreconcilable with dozens of Commission decisions, over five decades, that have found the domestic industry requirement satisfied by investments in post-sale products covered by an asserted patent, including (i) investments in service, support, repair, and refurbishment directed to an article already sold at least once, *e.g.*, Investigation Nos. 1293, 921, 376, 52; (ii) investments in transformation of a patented component into a consumer product,

---

[3] The Commission does not challenge Samsung Display's legislative history analysis (OB 41-44).

as the patentee's rights in the component would have exhausted upon its sale for use in the creation of the product, *e.g.*, Investigation Nos. 1138, 546, 370, 140; and (iii) investments by U.S.-based subsidiaries or other entities who purchased domestic industry products then sold them to end-users, *e.g.*, Investigation Nos. 1067, 832, 292, 69.[4] The Commission tacitly concedes this. RB 50 n.15. Its observation that "Samsung Display does not rely on such investments related to service and repair of the AMOLED DI Products," *id.*, does not alter the reality that its theory contravenes longstanding precedent.

### B. SEA Is Licensed to the Asserted Patents.

As the Commission acknowledges, "[i]t is well established that a complainant may rely on the domestic activities of its licensee … to establish a domestic industry." RB 52. Contrary to the Commission's assertions on appeal (RB 51-54), its own findings below and undisputed record facts establish that SEA is licensed.

The Commission found that SEC is licensed to the Asserted Patents as to the Galaxy DI Products. Appx45321 ("The parties also do not dispute that SEC has an implied license to practice the Asserted Patents."); *see also* Appx43720 (Initial Determination) ("**SEC's License**[.] From these undisputed facts, I find that, for

---

[4] Several decisions were affirmed by this Court. *E.g.*, *HC Robotics v. Int'l Trade Comm'n*, 2025 WL 2424283, at *9 (Fed. Cir. Aug. 22, 2025) (Inv. No. 1293) (affirming finding of violation); *Caterpillar Prodotti Stradali v. Int'l Trade Comm'n*, 847 F. App'x 893, 900 (Fed. Cir. 2021) (Inv. No. 1067) (same in relevant part).

purposes of this order, SEC is a licensee of the Asserted Patents."). The parties' disagreement regarding the scope of SEC's rights was limited to whether SEC's license extended beyond the Domestic Industry Products. Appx46301 (Complainant's Pre-Hearing Brief) ("[T]he parties do not dispute that SEC is an implied licensee as to the DI Products.").

SEC's license clearly encompasses SEA, the subsidiary through which it exclusively sells and distributes those products in the United States. Appx60600-60601, 565:20-566:18 (Samsung Display's corporate representative explaining that SEC's license "encompass[es] SEA" because "SEA is … [SEC's] marketing and sales arm"); Appx60606-60609, 571:14-574:12 ("[S]ince our license … covers the making and selling of the Galaxy Smartphones, … we are providing the license for [SEC's] subsidiaries as well."); Appx60611, 576:1-13.

Samsung Display demonstrated below that SEC's and SEA's licenses alike arise from its conduct and statements. *See De Forest Radio Tel. Co. v. United States*, 273 U.S. 236, 241 (1927) ("Any language used by the owner of the patent or any conduct on his part exhibited to another, from which that other may properly infer that the owner consents to his use of the patent in making or using it, or selling it, upon which the other acts, constitutes a license[.]"); Appx46300-46302; Appx68737-68739; Appx68959-68960.

*First*, Samsung Display's close and decade-long collaboration with SEC and SEA to develop and commercialize the Galaxy DI Products, which exploit the patented technologies in the AMOLED DI Products, indicates Samsung Display's consent to SEC and SEA practicing its patents in connection with those products. Appx66179-066181, QA4-12; Appx60594-60595, 559:16-560:9; Appx60583-60586, 548:22-551:5; Appx60646-60656, 611:20-621:3; Appx60601, 566:5-18; Appx60458-60459, 424:15-425:21.

*Second*, Samsung Display repeatedly confirmed that SEC and SEA are licensed to practice its patents with Galaxy products incorporating its displays. Appx66221, QA59 (corporate representative testimony that "SEA is authorized and has an implied license to practice the Asserted Patents"); *id.* at QA55 (same for SEC); Appx60594-60595, 559:16-560:9; Appx60599, 564:16-24; Appx60602-60603, 567:17-568:18; Appx66221-66222, QA61-62 (representative explaining it was unnecessary for Samsung Display and SEC to memorialize the license given their relationship, but their supply agreement "confirms the[ir] mutual understanding") (citing Appx77051-77052).

Ample authority establishes SEA's license in view of these undisputed facts and unrebutted testimony. *See Wang Lab'ys, Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1581-82 (Fed. Cir. 1997) (six-year course of conduct supported inference of license); *Winbond Elecs. Corp. v. Int'l Trade Comm'n*, 262 F.3d 1363, 1374 (Fed.

Cir. 2001) ("implied license may arise by … acquiescence" or "conduct"); *Mueller v. Mueller*, 95 F. 155, 158-59 (3d Cir. 1899) (inferring license from "circumstances and the situation of the parties").

The Commission has presented no basis for revisiting its finding that SEC is licensed or for questioning the existence of SEA's license. That Samsung Display negotiates with SEC "at arm's length" so that it can sell *different* products to SEC's competitors (RB 18) is immaterial to whether SEC and SEA are licensed. The Commission cites no precedent suggesting otherwise.

The Commission's assertion on appeal that it "found that … neither SEC nor SEA are licensees that practice or otherwise exploit the Asserted Patents in the United States" (*id.*) is incorrect and misleading. The ALJ observed that "Complainant [does not] assert that SEA has an *express* license to the patents." Appx219 (emphasis added). Neither the ALJ nor the Commission found SEA unlicensed, and they both found that SEC has an implied license. *Supra* at 23. The unrebutted record confirms SEA also has an implied license. *Supra* at 24-25. And SEC and SEA clearly are authorized to practice and exploit the patents in collaborating with Samsung Display to develop and commercialize in the United States "Samsung" smartphones that use custom versions of the patented invention. OB 7-12; *supra* at 23-25.

### C. The Commission's Other Arguments Are Unavailing.

The Commission asserts that Samsung Display's statutory interpretation requires that "accused products that are found to infringe" be "articles protected." RB 58. That is incorrect. To be "protected," an article must be authorized. Infringing products, by definition, are not authorized. Articles that meet every limitation of a claim are either (a) "shielded" by the patent if they are or contain authorized embodiments of the invention, in which case they are "articles protected" under Section 337(a)(2)-(3), or (b) not "shielded" by the patent if they lack authorization, in which case they are "articles that … infringe" under Section 337(a)(1).

The Commission also offers hypotheticals and cases as purported evidence that Samsung Display's statutory interpretation is overbroad. These scattershot examples miss their mark. The first hypothetical (RB 59) does not indicate whether the manufacturers are affiliated, whether or how they collaborate, or whether the car manufacturer is licensed to the patents. Regardless, domestic investments in the car may be relevant to the custom-designed patented blades provided they are considered an intrinsic part of the car and not a mere accessory or ancillary product. In any event, hypothetical edge cases are properly left to future cases that present those situations or to Congress. OB 46.

The Commission's second hypothetical is inapposite because a building is not an importable "article"—a good or merchandise—and thus cannot be an "article

protected." *ClearCorrect Operating, LLC v. Int'l Trade Comm'n*, 810 F.3d 1283, 1298-99 (Fed. Cir. 2015) (explaining that "Congress used 'goods' and 'articles' synonymously," "'goods' are … limited to movables," and the equivalent term "merchandise" also is "not understood as including real estate"); *id.* at 1289-90 ("The Commission's jurisdiction … is limited to 'unfair acts' involving the importation of 'articles.' 19 U.S.C. § 1337(a)."). The same is true of the "attraction" at issue in *Video Game* (RB 59-60), which comprised a "physical space," a "play environment" with "various themes and effects," "toys," and "other electronic items." *Certain Video Game Sys. and Wireless Controllers*, Inv. No. 337-TA-770, 2013 WL 12410036, at *35 (Oct. 28, 2013).

Finally, in *Roku, Inc. v. Int'l Trade Comm'n* (RB 60), the respondent contended that the complainant was required to rely on investments in downstream TVs *instead of* investments in patented software used in the TVs. 90 F.4th 1367, 1375 (Fed. Cir. 2024). This Court held that the Section 337(a)(3) inquiry "does not *require* expenditures in whole products" and "*can* [be] satisf[ied] … based on expenditures related to a subset of a product"; it did not address permissibility of reliance on investments in downstream products. *Id.* at 1374 (emphasis added).

## IV. ALTERNATIVELY, SEA'S INVESTMENTS ARE "WITH RESPECT TO" THE ARTICLES PROTECTED BY THE PATENT.

The Commission's responses to Samsung Display's alternative appellate argument are also unavailing.

*First*, the Commission tries to dismiss *Motorola* on the ground that the scenario there (investment in component of patented product) is the converse of the scenario here (investment in product comprising patented component). RB 36. But Samsung Display's point is that this Court's test for the *Motorola* scenario—whether the component is a "significant" and "tailored" part of the product—would also be appropriate here. OB 51-52. The Commission articulates no reason why not.

*Second*, the Commission faults Samsung Display for purportedly focusing on the connection between protected articles and downstream *articles* instead of downstream *investments*. RB 35. This critique is misplaced. The connection between the articles is indeed a critical part of the analysis. But, consistent with the statutory text, the focus and endpoint of the analysis are the connection between the protected articles and the downstream *investments*. OB 53 (explaining that, because "[e]ach display is critical to its corresponding smartphone and each smartphone provides the sole use-case for the display," the fact that "*SEA's investments* are essential to the commercialization of the smartphones" means "*they* are essential to the exploitation of *the customized displays*") (emphasis added).

*Third*, the Commission's defense of its realities-of-the-marketplace test amounts to a summary of its application of the test in the proceedings below. *Compare* RB 38-43, *with id.* at 14-17. That rehash is nonresponsive to Samsung Display's argument that the test is "untethered to the statutory language" because it

focuses on the concept of "patented technology" instead of actual "articles protected by the patent" (OB 54-59)—an assertion of "fundamental legal error" (OB 54), not a request to "reweigh the evidence" (RB 37).

*Fourth*, the Commission asserts, "whether the comparison is with the patented article or with the patented technology … Samsung Display failed to carry its burden[.]" RB 43. The Commission continues to conflate the critical distinction between (a) the *actual, customized* display panels in the AMOLED DI Products (the "articles protected by the patent") and (b) the *intangible concept of* a patented display panel, *i.e.*, a hypothetical panel containing the claimed structures (what the Commission refers to as the "patented technology or patented article") (Appx18). *Broadcom*, 28 F.4th at 250 ("[Section 337(a)(3)] requires a complainant to identify 'actual 'articles protected by the patent.''") (quoting *Microsoft Corp. v. Int'l Trade Comm'n*, 731 F.3d 1354, 1361-62 (Fed. Cir. 2013)).[5]

## V. THIS COURT SHOULD RESOLVE ALL ISSUES RAISED NOW.

Finally, the Commission makes a perfunctory request for a remand for it to adjudicate "in the first instance" "Samsung Display's statutory arguments … and …

---

[5] This conflation may explain the Commission's mistaken assertion that "AMOLED DI Products are … sold to … customers other than SEC." RB 38 n.10. Every AMOLED DI Product is customized (including its patented panel), "ha[s] an exclusive operational relationship with its corresponding Galaxy DI Product model," and is "sold on an exclusive basis by Samsung Display to SEC." OB 10-11. Samsung Display sells *different* display products to customers other than SEC.

alternative arguments that respondents made below." RB 46. There is no good reason for this Court to delay resolving those issues.

*First*, each argument raises either a pure question of law or a question of law as to which the parties agree the underlying facts are undisputed. Appx70521-70522 (Respondents observing, as to whether "SEA's investments are … 'with respect to articles protected by the patent,'" that "[t]he relevant facts are undisputed"); Appx39284 (Commission Staff observing, as to patent exhaustion, that "[t]he underlying facts appear to be largely undisputed"). This Court regularly resolves such issues in the first instance. *See Corning v. Fast Felt Corp.*, 873 F.3d 896, 901 (Fed. Cir. 2017); *Marine Polymer Techs., Inc. v. HemCom, Inc.*, 659 F.3d 1084, 1091 (Fed. Cir. 2011), *rev'd on other grounds*, 672 F.3d 1350 (Fed. Cir. 2012).

*Second*, the Commission has staked out its position and argument on each issue. RB 46-60 (rejecting lead argument); *id.* at 35-45 (rejecting alternative argument); *id.* at 46-51 (addressing exhaustion); *id.* at 51-54 (addressing licensing). The Commission does not contend it lacked an adequate opportunity to consider any issue, formulate its views, and present its argument. Nor could it. The Commission obtained two deadline extensions and assured this Court that the additional time (58 days in total) would enable it to "completely address" the issues raised and vet its positions. Dkt. 23 (first request) at 4 ("The requested extension will allow the Commission adequate time to completely address the issues raised on appeal.");

Dkt. 26 (second request) at 2 ("Especially in light of the issues raised by Appellant, the time allotted for Commission briefs has to allow additional time for the briefs to circulate to the General Counsel and each Commission office for approval[.]").

*Third*, this Court exercises its "independent judgment" in resolving statutory interpretation issues without deference to the Commission. *Lashify*, 130 F.4th at 957 (quoting *Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 412 (2024)).

"In these circumstances, [the Commission] ha[s] … furnished no basis for viewing a remand for further proceedings as anything but a pointless prolonging of litigation." *Medraph, Inc. v. Medtronic, Inc.*, 843 F.3d 942, 948 (Fed. Cir. 2016). The Court should reverse the Commission's determination on domestic industry.[6]

## CONCLUSION

The Court should reverse and remand. Alternatively, it should vacate and remand.

[6] In a footnote, the Commission requests a remand for it to "make findings regarding … allocation and significance of SEA's U.S. expenditures," RB 37 n.9, but the Commission has already found in other investigations that SEA's investments in the same smartphones establish a domestic industry, OB 18.

Dated: January 12, 2026

Respectfully submitted,

*/s/ Tarek J. Austin*

Robert A. Long (rlong@cov.com)
Sturgis M. Sobin (ssobin@cov.com)
Richard L. Rainey (rrainey@cov.com)
Jeffrey H. Lerner (jlerner@cov.com)
Jared Frisch (jfrisch@cov.com)
Daniel W. Cho (dwcho@cov.com)
Tarek J. Austin (taustin@cov.com)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth St. NW
Washington, DC 20001-4956
(202) 662-6000

Brian G. Bieluch (bbieluch@cov.com)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
(424) 332-4800

*Counsel for Appellant*
*Samsung Display Co., Ltd.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 25-1791

**Short Case Caption:** Samsung Display Co., Ltd. v. ITC

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 6,998 words.
- [ ] the filing has been prepared using a monospaced typeface and includes ________ lines of text.
- [ ] the filing contains ________ pages / ________ words / ________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ________).

Date: 01/12/2026

Signature: /s/ Tarek J. Austin

Name: Tarek J. Austin